492 So.2d 1382 (1986)
CITY OF RIVIERA BEACH, a Florida Municipal Corporation, and William "Boone" Darden, Appellants,
v.
James FITZGERALD, Appellee.
No. 84-2730.
District Court of Appeal of Florida, Fourth District.
August 27, 1986.
*1383 Michael B. Davis of Davis Critton Hoy & Diamond, West Palm Beach, for appellants.
Philip M. Burlington of Edna L. Caruso, P.A., and Montgomery, Searcy and Denney, P.A., West Palm Beach, for appellee.
DELL, Judge.
The City of Riviera Beach and William "Boone" Darden (Darden) appeal from a final judgment awarding Appellee James Fitzgerald (Fitzgerald) damages in an action brought under 42 U.S.C. § 1983.
This suit arose because appellants failed to promote Police Lieutenant Fitzgerald to the rank of captain in the Riviera Beach Police Department. In May of 1981, one of the police department's three captains announced that he would resign within two weeks. On May 21, 1981, Darden requested that the Civil Service Board submit an eligibility list for promotion. Prior to Darden's request for an eligibility list, the Civil Service Board had voted to change the "time in grade" requirement for captain from one year to three years. This change made Charles Napier, one of the police department's five lieutenants, ineligible to take the examination for promotion. Napier filed a civil service grievance, and while it was pending, Fitzgerald and the three remaining lieutenants took the written and oral portions of the examination. Fitzgerald and two other lieutenants passed the written portion of the examination. The Civil Service Board's chief examiner departed from prior policy and utilized professional law enforcement officers from outside the Riviera Beach Police Department to conduct the oral review. Fitzgerald received the only passing grade on the oral examination. On September 12, 1981, the Civil Service Board submitted a certified eligibility list which included the names of all four lieutenants, but reflected that only Fitzgerald had a passing score on both the written and oral portions of the examination.
Darden exercised his option under Section 2-50(c), Riviera Beach Code, to reject the promotion list because it certified only one eligible candidate (Fitzgerald) for promotion to the rank of captain. He did not, however, comply with the corresponding requirement of Section 2-50(d), Riviera Beach Code, which required a written statement explaining his reasons for rejecting the promotion list. Darden testified that he did not wish to recommend a promotion from a single candidate list, and that the city manager had advised him that because of the grievance previously filed by Charles Napier, the city manager would not agree to a promotion from the September 12 list. Darden permitted Lieutenant *1384 Napier to continue as acting captain.[1] Fitzgerald timely filed a civil service grievance which the city manager denied on October 16, 1981. Two days before the city manager's denial of appellee's grievance, the City Commission removed the civilian members from the Civil Service Board and replaced them with new members. Fitzgerald requested a hearing before both the previous board members and the new members of the Civil Service Board, but never received a hearing on his grievance.
The newly-constituted board investigated Lieutenant Napier's grievance and voted to change the "time in grade" back to one year and to return to the policy of using Riviera Beach personnel to conduct oral examinations. As a result of the changes, Lieutenant Napier became eligible to take the examination for promotion. Napier took the written examination, and the remaining lieutenants, including Fitzgerald, exercised the option of using their previous scores rather than retaking the written examination. Napier failed the written examination. Fitzgerald and two other lieutenants successfully completed the oral portion of the examination. Darden selected Lieutenant Roberts, one of the successful applicants, for promotion to captain.
Fitzgerald filed suit claiming appellants had acted in violation of 42 U.S.C. § 1983. He alleged a denial of due process by the City of Riviera Beach for its refusal to grant him a Civil Service Board hearing on his grievance, and by Darden's failure to promote him to captain when he was "at the top of the promotional eligibility list." He also alleged a denial of equal protection on grounds of discrimination and arbitrary conduct in his rejection. He claimed both compensatory and punitive damages. The trial court entered a directed verdict against Fitzgerald on his claim for punitive damages, and Fitzgerald abandoned his claim for mental anguish and suffering. The jury awarded Fitzgerald $45,000 for lost wages and $125,000 for denial of due process of law, but found in favor of appellants on Fitzgerald's claim for denial of equal protection.
Appellants contend that they should have received a directed verdict because Fitzgerald failed to establish a deprivation of a constitutionally-protected right to promotion to captain, and he failed to demonstrate that he had made timely application to the Civil Service Board for review of his grievance. They also argue that the trial court erred when it instructed the jury that it could award damages on grounds other than compensation for actual damages, and that the trial court should have granted a new trial because of an excessive verdict.
Fitzgerald brought his claim exclusively under 42 U.S.C. § 1983, which provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
The due process clause of the fourteenth amendment provides that no state shall deprive a person of life, liberty or property without due process of law. Fitzgerald claimed below that appellants deprived him of a property interest in violation of his substantive and procedural due process rights. Appellants argue that Fitzgerald failed to present any evidence which established a deprivation of a protected property interest.
The question of whether a promotion constitutes a property interest has been addressed in Schwartz v. Thompson, 497 F.2d 430 (2d Cir.1974) and International Association of Firefighters v. City of Sylacauga, *1385 436 F. Supp. 482 (N.D.Ala. 1977). In Schwartz, the court found that the appellant had no property interest in the promotion he sought, but stated in dicta that "one can conceive of circumstances where a promotion would be virtually a matter of right  for example, where it was solely a function of seniority or tied to other objective critera... ." 497 F.2d at 433. In Firefighters, the court found the Civil Service Board deprived the firefighters of a protected property interest in the promotional procedures prescribed by state law and stated:
Plaintiffs, by virtue of their employment, have an entitlement to compete for promotions on a merit basis by competitive examination, if not by force of the state statute and Civil Service Board rules, then by an implied term in their employment contracts.... The property interest of plaintiffs in the required promotional procedures is established by virtue of the statutory entitlement.
436 F. Supp. at 490.
Fitzgerald concedes that the Riviera Beach Code provided Darden with discretion to accept or reject an eligibility list which certified only one eligible candidate, provided, according to Fitzgerald, that Darden state his reasons in writing within fifteen days. However, he argues that since he was the only eligible person on the certified list wrongfully rejected by Darden without a statement or reason, he had a legitimate right to the promotion. Although we disagree with Fitzgerald's assertion that Darden had only fifteen days to reject the certified list, we conclude that Darden's failure to state his reasons in writing within a reasonable time constituted a violation of Section 2-50(d), Riviera Beach Code. We also conclude that Darden violated Section 2-86 of the Riviera Beach Code by permitting Lieutenant Napier to fill the vacancy for a period of more than fifteen days while a promotion was pending. Since Fitzgerald was the only qualified candidate for promotion to the rank of captain, he had a reasonable expectation that Darden would either promote him to captain or substantially comply with the city's duly promulgated procedures for rejection. In Burnaman v. Bay City Independent School District, 445 F. Supp. 927, 936 (S.D.Tex. 1978), the court held that:
[f]ailure of the Government to follow its own duly promulgated rules and published policies violates a citizen's rights to procedural due process.
Id. at 936.
In Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the United States Supreme Court recognized that the right to procedural due process is absolute in the sense that it does not depend on the merits of a plaintiff's substantive claims. Therein, the high court held that elementary and secondary school students who brought a § 1983 case claiming denial of procedural due process in their school suspensions were entitled to compensatory damages to the extent that actual injury could be proved. Absent such proof of actual injury, nominal damages could be awarded, even if it were determined that the suspensions were justified. The Court stated:
Even if respondents' suspensions were justified, and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process. "It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing. .. ." Fuentes v. Shevin, 407 U.S. 67 at 87, 92 S.Ct. [1983] at 1997 [32 L.Ed.2d 556]; see Codd v. Velger, 429 U.S. 624 at 632, 97 S.Ct. [882] at 886 [51 L.Ed.2d 92] (Stevens, J., dissenting); Coe v. Armour Fertilizer Works, 237 U.S. 413, 424, 35 S.Ct. 625, 629, 59 L.Ed. 1027 (1915).
435 U.S. at 266, 98 S.Ct at 1053.
Recently the Supreme Court again emphasized that Carey did not establish a two-tiered system of constitutional rights:
The argument misperceives our analysis in Carey. That case does not establish a two-tiered system of constitutional rights, with substantive rights afforded *1386 greater protection than "mere" procedural safeguards. We did acknowledge in Carey that "the elements and prerequisites for recovery of damages" might vary depending on the interests protected by the constitutional right at issue... . But we emphasized that, whatever the constitutional basis for 1983 liability, such damages must always be designed "to compensate injuries caused by the constitutional deprivation." Id. at 265, 98 S.Ct. at 1053 (emphasis added).
Memphis Community School District v. Stachura, ___ U.S. ___, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986).
The question of the causal relationship between appellants' denial of procedural due process to Fitzgerald and the denial of his promotion was squarely before the jury. The record contains sufficient evidence to support the jury's conclusion that but for appellants' denial of due process Fitzgerald would have received the promotion to captain. Indeed the jury specifically found bad faith on the part of the police chief. Therefore we hold that the jury's award of compensatory damages comports with the standards of Carey and Stachura.
Finally, we address the questions raised by appellants concerning the amount of damages awarded to appellee. In Carey v. Piphus, the Supreme Court considered the issue of damages in a § 1983 action:
Insofar as petitioners contend that the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights, they have the better of the argument. Rights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect.
Our legal system's concept of damages reflects this view of legal rights. "The cardinal principle of damages in Anglo-American law is that of compensation for the injury caused to plaintiff by defendant's breach of duty." 2 F. Harper & F. James, Law of Torts § 25.1, p. 1299 (1956) (emphasis in original). The Court implicitly has recognized the applicability of this principle to actions under § 1983 by stating that damages are available under that section for actions "found ... to have been violative of ... constitutional rights and to have caused compensable injury. ..." Wood v. Strickland, 420 U.S. 308, at 319, 95 S.Ct. [992], at 999 [43 L.Ed.2d 214] (emphasis supplied)... . The lower federal courts appear generally to agree that damages awards under § 1983 should be determined by the compensation principle.
... .
... [O]ver the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights. These rules, defining the elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the inquiry under § 1983 as well.
It is not clear, however, that common-law tort rules of damages will provide a complete solution to the damages issue in every § 1983 case. In some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right. In such cases, it may be appropriate to apply the tort rules of damages directly to the § 1983 action... . In other cases, the interests protected by a particular constitutional right may not also be protected by an analogous branch of the common law torts... . In those cases, the task will be the more difficult one of adapting common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right.
... In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question  just as the *1387 common-law rules of damages themselves were defined by the interests protected in the various branches of tort law.
435 U.S. at 254-60, 98 S.Ct. at 1047-50 (footnotes omitted).
The record contains sufficient evidence to support the jury's award of the pay differential between the rank of lieutenant and captain to retirement age, and the retirement pay differential calculated upon Fitzgerald's life expectancy. The damages awarded for lost wages are consistent with the policies set forth in Carey v. Piphus and are fair compensation for the loss sustained by appellee.
However, Fitzgerald has failed to demonstrate a basis for the jury's award of $125,000. He argues that this sum constitutes compensation for the denial of his due process rights, yet he fails to acknowledge that the jury's award of $45,000 has already compensated him for that loss. In the same vein, his argument that he will never receive a promotion to captain within the police department also fails to take into consideration that the jury's award included that loss.
In both Carey and Stachura, the Supreme Court recognized three types of damages which may arise from deprivation of a constitutional right: (1) compensatory damages where the injured party can demonstrate actual injury or loss, (2) nominal damages where the injured party cannot prove actual injury or loss, and (3) exemplary or punitive damages to deter or punish malicious deprivation of rights. Obviously, nominal damages do not apply here because Fitzgerald proved that he sustained actual damages in the amount of $45,000. However, the court instructed the jury that it could also award Fitzgerald an additional sum for the deprivation of a constitutional right, and the jury awarded $125,000 to compensate him for "denial of due process." It is clear from Stachura that Carey did not furnish authority for this instruction and that it was error for the trial court to instruct the jury that it could award an abstract amount for the "importance" of a constitutional right.
We therefore hold that damages based on the abstract "value" or "importance" of constitutional rights are not a permissible element of compensatory damages in such cases.
Stachura, 106 S.Ct. at 2537.
We recognize that the trial court did not have the benefit of Stachura when it instructed the jury.
We are somewhat frustrated on this final question because the record contains evidence from which a jury may have concluded that Darden maliciously deprived Fitzgerald of his constitutional rights. In fact, the jury answered an interrogatory contained in the verdict form, and found that Darden did not act with a good faith belief that his conduct was constitutional. However, the trial court directed a verdict against Fitzgerald on his claim for punitive damages, thereby removing punitive damages as a basis for the jury's award. Fitzgerald did not cross appeal the directed verdict on this issue, and therefore we cannot address the propriety of the trial court's ruling. We have found no other basis which would support the jury's award of $125,000. The only other claim which Fitzgerald alleged was a claim for mental pain and anguish, but he abandoned this claim before the case went to the jury.
Therefore, we affirm the final judgment awarding Fitzgerald damages, but we reverse the amount of the award and remand this case to the trial court with directions to enter judgment in favor of Fitzgerald in the amount of $45,000.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
DOWNEY and LETTS, JJ., concur.
NOTES
[1] Although Section 2-86 of the Riviera Beach Code provides that a person appointed to fill a vacancy while a promotion is pending cannot remain in that position for more than fifteen days after the certification of the eligibility list, Napier remained in the position for more than five months.