565 So.2d 1365 (1990)
Juan LONDONO, Appellant,
v.
STATE of Florida, Appellee.
No. 89-0799.
District Court of Appeal of Florida, Fourth District.
July 18, 1990.
Rehearing and Stay Denied August 31, 1990.
*1366 Richard L. Jorandby, Public Defender, and Joseph S. Shook, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Carol Cobourn Asbury, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Juan Londono was charged with armed trafficking in cocaine. He appeals his conviction for the lesser-included offense of attempted armed possession of cocaine without a firearm and conspiracy to traffic in cocaine. Because we find entrapment as a matter of law we reverse and remand with instructions to discharge the appellant. We do not treat the additional points on appeal as they are rendered moot by our disposition of Point I.
Appellant met Roy, a confidential informant, at a discoteque. Roy introduced him to two women, Monica and Annette. Monica offered appellant cocaine, but there was no mention of buying or selling cocaine that evening. Roy, Annette and appellant exchanged phone numbers.
The next morning, Annette called appellant to go to the beach with her and Monica. After picking him up, the three went to the beach, where the women told appellant how "they were doing very good" and how "they had a lot of cocaine and marijuana," According to appellant, he told the women that he had to go back to Colombia because he "wasn't doing too good here," at which time they told him "not to be dumb, to stay here, ... that if [he] knew somebody or people that [he] could introduce or to deal with drugs, that [he] was going to get the best prices, that [he] was going to make a lot of money the easy way, ... ." Later that afternoon, the women and Roy picked up appellant and took him for a ride. Roy asked him whether he knew anybody that would buy cocaine or marijuana, and told appellant to check on it because they would like to help him, and to not worry about the money. Appellant testified that he had no intention of buying or selling drugs before meeting Roy and the women. Appellant decided to get the money for the buy from Juan Garcia, but before meeting with Garcia, appellant called a jeweler friend to find out "everything related to gold." Later that night, Roy and Annette called, separately, asking appellant, "how things were and if [he] talked to someone, and the sooner [he] could do it, it was better." Appellant felt that Roy was "pushing" him.
The next morning, appellant met with Garcia and talked about the people he had met and about the gold that was supposed to be for sale. Appellant did not tell Garcia that this was actually a cocaine sale because he "didn't want to involve him into it. Simply, I just needed his money, without him getting hurt." Garcia never had anything to do with drug sales in the past; he was in the jewelry business. Later that night, appellant called Roy to tell him that he "needed to see him to talk about his business."
Appellant then obtained a gold sample from his jeweler friend because he "had to convince [Garcia] one way or the other that the gold, it was real, it existed." Roy called appellant and told him that everything was ready for the meeting; appellant called Garcia, told him about the meeting, and told him that he wanted to go alone, because "[h]e could have made an error without knowing, ... they [Roy] didn't know that I was talking to him about gold." Garcia insisted on going to the meeting. Appellant had not told Garcia anything about trying to buy cocaine.
Appellant and Garcia followed Roy and Annette to a bar where Roy told appellant that Reyes (a detective) was the one he had to meet, and introduced them. Reyes testified that Garcia could not have overheard their conversation and did not know what *1367 they were talking about because of the loud music and the fact that Garcia was facing away from Reyes. Because he did not want Garcia to know what he was doing, appellant told Roy and Reyes not to talk to Garcia. Appellant told Reyes that Garcia was "the money man." Leaving Garcia at the bar area, Reyes and appellant went into the bathroom where appellant tested Reyes' cocaine sample of one gram by snorting it, or, according to appellant, by "sniffing, not smelling, not trying it." Reyes told appellant to call him when everything was ready. Later that night, appellant beeped Reyes and during a taped conversation, he informed Reyes that they wanted five kilos. Appellant gave Garcia the gold sample he had borrowed from his jeweler friend, and Garcia told him if the gold was good he would try to collect the money to make the deal. Garcia thought the price quoted by appellant for five gold bars would be a good deal since it was well under the wholesale price.
On the morning of the arrest, Annette called appellant to tell him to let her know if he had come to a conclusion so they could make arrangements. Additionally, she relayed a message from Roy to call Reyes. Appellant talked to Reyes and they arranged a meeting. A little later, appellant called Garcia to tell him that everything was ready and to bring the money; Garcia insisted on attending the meeting, saying that if he could not go, "there was no business."
Appellant and Garcia both went to the meeting and in due course were arrested, tried and convicted. This appeal followed.
The substance of appellant's argument is that the state's failure to prove interruption of an ongoing criminal enterprise as required by Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985), mandates a finding of entrapment as a matter of law. As we will discuss, appellant's argument is correct and the trial court's judgment and the sentence must be reversed.
In Cruz v. State, 465 So.2d 516, the Florida Supreme Court discussed two coexisting tests to be applied in cases involving the defense of entrapment. While the subjective test focuses on the predisposition of the defendant to commit the crime and is normally a jury question, the objective test focuses on police activity and is a matter of law for the trial court to decide. The Cruz court determined that application of the threshold objective test requires that:
the court must first decide whether the police have cast their nets in permissible waters, and, if so, the jury must decide whether the particular defendant was one of the guilty the police may permissibly ensnare.
To guide the trial courts, we propound the following threshold test of an entrapment defense: Entrapment has not occurred as a matter of law where police activity (1) has as its end the interruption of a specific ongoing criminal activity; and (2) utilizes means reasonably tailored to apprehend those involved in the ongoing criminal activity.
The first prong of this test addresses the problem of police `virtue testing,' that is, police activity seeking to prosecute crime where no such crime exists but for the police activity engendering the crime. .. .
The second prong of the threshold test addresses the problem of inappropriate techniques. Considerations in deciding whether police activity is permissible under this prong include whether a government agent `induces or encourages another person to engage in conduct constituting such offense by either: (a) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or (b) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.' Model Penal Code § 2.13 (1962).
Id. at 521-522.
The supreme court found that although the record implied that police were attempting to interrupt some kind of ongoing activity, there was no showing of the specific activity that was targeted. "This lack of focus is sufficient for the scenario to fail the first prong of the test." Id. Additionally, the court found the "drunken bum" police decoy operation carried with it the *1368 substantial risk that the offense would be committed by persons other than those who are ready to commit it, thereby failing the second prong of the test. Therefore, there was entrapment as a matter of law.
Here, the first prong of the test was not satisfied since the defendant had no history of drug involvement, and the government's conduct in supplying the drug did not facilitate discovery or suppression of ongoing illicit traffic in drugs. Lusby v. State, 507 So.2d 611 (Fla. 4th DCA), rev. denied, 518 So.2d 1276 (Fla. 1987). Although the Lusby court determined that the police actions in that case fell within the first prong of the test, the court found it significant that it was appellant and his codefendant who had the contacts to obtain illicit drugs. This court distinguished its holding from the third district's opinion in Marrero v. State, 478 So.2d 1155 (Fla. 3d DCA 1985), where the defendant was recruited as a seller of marijuana, to be supplied by undercover agents.
In Lusby, the record also revealed that the police did not know of the appellant. However, because the informant had information from the appellant himself that he had a friend who was a drug dealer and that he used drugs, and because appellant seemed familiar with drug jargon, and the informant and appellant exchanged numbers to set up something in the future, the Lusby court found that the government could reasonably conclude that appellant was engaging in the ongoing sale of drugs. Lusby, 507 So.2d at 612. Similarly, in Laws v. State, 540 So.2d 928 (Fla. 4th DCA), cause dismissed, 545 So.2d 1367 (Fla. 1989), this court found that evidence that defendant produced cocaine from his contacts and stated that he had been in the business for a long time and had other clients, was sufficient to show that he was engaged in ongoing criminal activity.
However, unlike the Lusby or Laws defendants, appellant in this case had no prior history of drug use or trafficking, nor did he provide police any reason to infer a familiarity with drugs. Furthermore, he did not take an active part in supplying the drugs. There was therefore no basis for a conclusion that appellant was engaging in the ongoing sale of drugs. Pezzella v. State, 513 So.2d 1328 (Fla. 3d DCA 1987) (holding that there was no interruption of ongoing criminal activity when the police were unaware of any such activity prior to their actions, and, by supplying the drugs involved in the transaction, the police did not "facilitate discovery or suppression of ongoing illicit traffic in drugs"), rev. denied, 523 So.2d 578 (Fla. 1988); Marrero; Lusby.
There appears to be some degree of inconsistency among the cases, however. In State v. Konces, 521 So.2d 313 (Fla. 3d DCA 1988), the third district held that the first prong of the Cruz test was satisfied where the defendant readily agreed to sell cocaine and admitted that he had purchased drugs in the past. Konces is inconsistent with the rationale in the above cases because it utilizes a defendant's predisposition as a factor in determining the validity of police activity: the supreme court has determined that predisposition is part of the subjective test of entrapment for the jury to decide, and is not properly addressed as part of the objective test establishing the validity of police actions as a matter of law. Cruz. To the extent it conflicts with Cruz, we elect not to follow the Konces decision. Accordingly, appellees' reliance on Konces and similar cases supporting his predisposition argument are not proper considerations in the context of the objective test of "whether the police have cast their nets in permissible waters." Cruz.
In State v. Burch, 545 So.2d 279 (Fla. 4th DCA 1989), this court held in part that:
the instant police conduct passes the first prong of the Cruz test because it was obviously undertaken in response to the untenable high volume of drug trade near the school where the defendants were apprehended. It also passes the second prong because this sting was tailored to apprehend ongoing criminal activity, and is not outrageous as a matter of law. See Sarno v. State, 424 So.2d 829 (Fla. 3d DCA 1982), pet. for rev. den., 434 So.2d 888 (Fla. 1983); Gonzalez v. State, 525 So.2d 1005 (Fla. 3d DCA 1988).
The Burch opinion does not specify whether the police had any indication that the *1369 defendants in that case were themselves involved in prior criminal activities. Instead, the opinion states that a high volume of drug trade in the area enables police conduct to pass the first prong of the Cruz test. Although this view does not seem to conflict with Cruz, 465 So.2d at 522, such a factor is inapplicable to the present case since there is no evidence of a high volume of drug trade at either the place where appellant was arrested or at the bar where he first met the informant.
Furthermore, in Myers v. State, 494 So.2d 517 (Fla. 4th DCA 1986), this court held that police activity, especially the informant's activity, fell squarely within the second prong of the objective test when the informant induced, lured, and pressured the defendant by repeated phone calls. Also, the police had no evidence that the defendant had ever been involved in any unlawful drug transaction; rather, the informant was responsible for originating and instigating the idea. Such police activity constituted entrapment as a matter of law and required reversal of the judgment and sentence.
Clearly, appellant was entrapped as a matter of law, and his judgment and sentence must be reversed. Appellee's argument that appellant's ready acquiescence to commit the crime overcomes his entrapment defense is misplaced. A predisposition issue is part of the subjective entrapment test and is not properly considered in the context of "whether the police have cast their nets in permissible waters." Cruz. Furthermore, appellee's assertion that appellant was not singled out by police as a target does nothing to support his argument. See Lusby v. State, 507 So.2d at 612-613. For the above reasons, we reverse and remand with instructions to discharge appellant.
REVERSED AND REMANDED.
HERSEY, C.J., and DOWNEY and WARNER, JJ., concur.