697 So.2d 549 (1997)
Juan Luis GARCIA, Sr., Appellant,
v.
Cristobal REYES and The City of Fort Lauderdale, Appellees.
No. 96-2924.
District Court of Appeal of Florida, Fourth District.
July 9, 1997.
Certification of Questions Denied August 19, 1997.
Steven Wisotsky, Miami, for appellant.
Raoul G. Cantero, III and Jonathan D. Colan of Adorno & Zeder, P.A., Miami, for appellees.
PER CURIAM.
Juan Luis Garcia, Sr. (Garcia) appeals from the dismissal with prejudice of his third amended complaint in which he sought a declaratory judgment and damages for thirty months of wrongful imprisonment resulting from police misconduct. We affirm, finding *550 that there is no cause of action for money damages against the state, its agencies or employees acting in their official capacities for police misconduct arising directly under the due process clause, article I section 9, of the Florida Constitution. We further find that if any such action existed, a lawsuit against the City of Fort Lauderdale and its police officer, Cristobal Reyes, would be barred by sovereign immunity. See generally § 768.28, Fla. Stat. (1995).
In his third amended complaint, Garcia does not allege violations of 42 U.S.C. § 1983, nor does he assert any causes of action for traditional common law torts such as false arrest. Instead, Garcia claims that our holding in Garcia v. State, 582 So.2d 88 (Fla. 4th DCA 1991), where this court reversed his conviction for attempted armed trafficking and conspiracy on due process grounds, carries with it presumptive liability for civil damages. Our holding in Garcia was based on our finding in Londono v. State, 565 So.2d 1365 (Fla. 4th DCA 1990), that Garcia's co-defendant was "objectively" entrapped as a matter of law in a reversesting operation by the police.
Garcia argues that police misconduct violated his state due process rights constituting a wrongful act within the meaning of section 768.28. However, our supreme court has announced that "§ 768.28, when viewed alone, was intended to render the state and its agencies liable for damages for traditional torts under state law, but to exclude such liability for `constitutional torts.'" Hill v. Department of Corrections, 513 So.2d 129, 133 (Fla.1987) (citation omitted) (emphasis supplied). The United States Supreme Court later overruled Hill's prohibition against bringing federal civil rights actions arising under § 1983 in Florida courts. See Howlett v. Rose, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). It did not, however, disturb Hill's broader statement that the waiver of sovereign immunity pursuant to section 768.28 extended to traditional torts but not to "constitutional torts."
"[T]he creation of section 768.28, waiving sovereign immunity in certain circumstances, created no new causes of action against a governmental entity which did not previously exist." Huff v. Goldcoast Jet Ski Rentals, Inc., 515 So.2d 1349, 1350 (Fla. 4th DCA 1987) (citation omitted); see also Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912 (Fla.1985). As our supreme court explained in Trianon:
[I]t is important to recognize that the enactment of the statute waiving sovereign immunity did not establish any new duty of care for governmental entities. The statute's sole purpose was to waive that immunity which prevented recovery for breaches of existing common law duties of care. Section 768.28 provides that governmental entities "shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances." This effectively means that the identical existing duties for private persons apply to governmental entities.
468 So.2d at 917-18.
To allow Garcia to bring a cause of action based on a violation of our state's constitution, where no concomitant duty arises for private citizens, would extend the waiver of sovereign immunity beyond the stated intent of the statute. It would also create a duty of care arising from the state constitution where none has previously existed.
It is only "when a duty of care exists does the essential inquiry turn to the question of sovereign immunity." George v. Hitek Community Control Corp., 639 So.2d 661, 663 (Fla. 4th DCA 1994). There has never been a common law duty of care with regard to:
[h]ow a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body.... This discretionary power to enforce compliance with the law, as well as the authority to protect the public safety, is most notably reflected in the discretionary power given to judges, prosecutors, arresting officers, and other law enforcement officials ....

Trianon, 468 So.2d at 919 (emphasis supplied) (citations omitted). This reasoning extends to the type of police conduct that is the subject of this lawsuitthe decision to institute *551 a reverse-sting operation as a means of enforcing compliance with the laws. See also DeMarco v. Publix Super Mkts., Inc., 360 So.2d 134, 136 (Fla. 3d DCA 1978) (no civil cause of action for interference with exercise of one's right under article I, section 21 of Florida Constitution[1]), aff'd, 384 So.2d 1253 (Fla.1980). But see Shuttleworth v. Broward County, 639 F.Supp. 654 (S.D.Fla.1986) (plaintiff may bring claim directly under article I, section 2 of the Florida Constitution[2]).
Although Garcia asserts that Florida courts have recognized due process causes of action in related contexts, the cases he relies onMetropolitan Dade County v. Sokolowski, 439 So.2d 932 (Fla. 3d DCA 1983), and City of Riviera Beach v. Fitzgerald, 492 So.2d 1382 (Fla. 4th DCA 1986)involve federal civil rights actions brought in state court. As the eleventh circuit recognized in an action to recover just compensation through inverse condemnation for injuries sustained as the result of an unreasonable zoning ordinance, there is "no support for the availability of an action for money damages, based either on trespass or violation of the right of due process, as guaranteed by the Florida Constitution." Corn v. City of Lauderdale Lakes, 816 F.2d 1514, 1518 (11th Cir. 1987) (emphasis supplied), rejected on other grounds, Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1574 (11th Cir.1989).
Accordingly, we affirm the decision of the trial court.
GLICKSTEIN, KLEIN and PARIENTE, JJ., concur.
PARIENTE, J., concurs specially with opinion.
PARIENTE, Judge, concurring specially.
I concur with the majority opinion, but write to address additional areas of concern under the facts of this case. Garcia asserts that his third amended complaint states a cause of action for a "state constitutional tort" under section 768.28(5) that closely parallels the type of constitutional tort under 42 U.S.C. § 1983 for police misconduct.
If Garcia seeks to rely on federal precedent in civil rights claims, it is noteworthy that no federal court has found a due process violation even where it held that entrapment had been established as a matter of law. See, e.g., Gunderson v. Schlueter, 904 F.2d 407, 411 (8th Cir.1990); Schieb v. Humane Soc'y of Huron Valley, 582 F.Supp. 717, 725 (E.D.Mich.1984) ("there is no federal constitutional right to be free from entrapment").
Garcia correctly points out that the eighth circuit in Gunderson recognized that outrageous conduct by law enforcement authorities that "shocks the conscience" might violate substantive due process. 904 F.2d at 410. However, the eighth circuit rejected finding a due process violation giving rise to a federal civil rights action under the facts of that case. To do so would have brought the court "too close to converting every successful entrapment defense into a section 1983 action for damages." Id. at 411. Similarly, finding a due process violation based on the facts surrounding Garcia's entrapment would likewise convert every successful entrapment defense into a claim for damages under the due process clause of the state constitution.
Even assuming that a set of facts could be sufficiently egregious to give rise to a state-based constitutional tort, the actions of the police giving rise to Garcia's entrapment defense, as detailed in Londono v. State, 565 So.2d 1365 (Fla. 4th DCA 1990), are not sufficiently egregious so as to shock the judicial conscience. In fact, I have serious doubts whether the facts as set forth in Londono would constitute objective entrapment *552 of Garcia as a matter of current law in light of our supreme court's decision in State v. Hunter, 586 So.2d 319 (Fla.1991).[3]
In Hunter, our supreme court found that the appellant, who had been approached by his co-defendant and had "minimal telephone contacts" with an informant, could not benefit from his co-defendant's successful entrapment defense. Hunter, 586 So.2d at 322. "When a middleman, not a state agent, induced another person to engage in a crime, entrapment is not an available defense." Id. A defendant "cannot raise `due process violations allegedly suffered by third parties.'" Id. (citations omitted). Here, Garcia's involvement in criminal activity was induced by his co-defendant, who was not a state agent. In fact, the co-defendant, Londono, attempted to shield Garcia from direct contact with the state's agent and from knowledge that illegal drugs were involved.
I additionally write to clarify my views on whether Garcia's children have a separate and independent cause of action arising under § 1983. This issue was addressed in Garcia v. Reyes, 677 So.2d 1293 (Fla. 4th DCA 1996), review granted, 592 So.2d 682 (Fla.1991), where this court affirmed a final order dismissing with prejudice Count III of Garcia's first amended complaint. Count III asserted a claim under § 1983 for loss of the due process right of familial association and companionship.
At the time the appeal in Garcia v. Reyes was filed, Garcia's first amended complaint set forth an independent count under § 1983 based on police misconduct in the reverse sting operation. Unlike the § 1983 claim in Count III, this additional § 1983-based claim was not dismissed by the trial court. Subsequent to the appeal being filed in Garcia v. Reyes, Garcia voluntarily dismissed this § 1983 count. We were not made aware of the dismissal of Garcia's independent § 1983 claim.
While I do not suggest that either party had an obligation to bring this subsequent development to our attention, my dissent in Garcia v. Reyes, 677 So.2d at 1294-95, was premised on the existence of an independent § 1983 action arising from the alleged police misconduct. By my dissent, I intended only to express my opinion that the children of a parent claiming a violation of § 1983 as the result of a substantial wrongful imprisonment should be able to claim damages under § 1983 arising from the loss of their parent's companionship. I realize in hindsight that neither the parties at the time of the appeal nor I in my dissent addressed whether the children's claim would be derivative to or independent of their father's separate § 1983 claim. Because Garcia had a separate § 1983 claim pending in the first amended complaint at the time of the appeal, my assumption was that his children's claim would be derivative.
Because it is now clear that Garcia has no state or federal cause of action for civil damages for violation of his substantive due process rights arising from the reversal of his criminal conviction, I do not agree that Garcia's children should have a separate and independent claim for the loss of their father's companionship.
The intent of my dissent was to allow an expansion of damages in cases where the police could otherwise be held liable for their actions under § 1983not to expand the circumstances in which police could be held liable. To hold that the children's claim for loss of familial companionship could exist independent of Garcia's independent § 1983 claim would turn virtually every case where a conviction was overturned based on police misconduct into a separate § 1983 action. This would be an unreasonable and unacceptable expansion of federal civil rights law that I do not endorse.
NOTES
[1] Article I, section 21 of the Florida Constitution provides:

Access to courts.The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.
[2] Article I, section 2 provides:

Basic rights.All natural persons are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real property by aliens ineligible for citizenship may be regulated or prohibited by law. No person shall be deprived of any right because of race, religion or physical handicap.
[3] In Garcia v. State, 582 So.2d 88 (Fla. 4th DCA 1991), we cited Herndon v. State, 591 So.2d 205 (Fla. 4th DCA 1991), as authority for reversal. Herndon was subsequently quashed by our supreme court in State v. Herndon, 593 So.2d 184 (Fla.1991), which found that case controlled by its recent decision in State v. Hunter, 586 So.2d 319 (Fla.1991).