837 So.2d 414 (2001)
Lucious BROWN and Henrietta Brown, Appellants,
v.
MIAMI-DADE COUNTY and Golden Glades Management Corp., Appellees.
No. 3D00-3540.
District Court of Appeal of Florida, Third District.
December 5, 2001.
Order Denying Rehearing January 28, 2003.
Dissenting Opinion on Denial of Rehearing January 28, 2003.
Barbara Green, Coral Gables; Alan B. Saslaw, Aventura; Clark, Robb, Mason & *415 Coulombe and James K. Clark, Miami, for appellants.
Robert A. Ginsburg, Miami-Dade County Attorney and Stephen A. Stieglitz, Assistant County Attorney, for appellee.
Before LEVY, GREEN, and FLETCHER, JJ.
Order Denying Rehearing En Banc January 28, 2003.
Dissenting Opinion on Denial of Rehearing En Banc January 28, 2003.
GREEN, J.
Appellants, Lucious and Henrietta Brown, plaintiffs below, appeal the dismissal of their claims against Miami-Dade County ("the County" or "Miami-Dade") for assault and negligence. They assert, and we agree, that their claims were not barred by the doctrine of sovereign immunity as found by the trial court. Accordingly, we reverse and remand for further proceedings.
On a review of a motion to dismiss, we must accept the well-plead allegations of the complaint as true. See Cutler v. Bd. of Regents, 459 So.2d 413, 414 (Fla. 1st DCA 1984). In their second amended complaint, the Browns sought damages against the County for assault and negligence.[1] The allegations as to assault in Count I were, in relevant part, as follows:
* * *
10. On or about June 12, 1997, Plaintiff, LUCIOUS BROWN, was a paying guest of the Howard Johnson Motel located at or near 16500 Northwest 2nd Avenue, Miami, Dade County, Florida (hereinafter referred to as "THE PREMISES").
11. On or about this date, Defendant, MIAMI-DADE, by and through its Police Department employees, servants, and/or agents, conducted a police operation related to prostitution on THE PREMISES.
12. While the police operation was ongoing, Plaintiff, LUCIOUS BROWN, was walking on an inside hallway of THE PREMISES going to and from the Motel Lobby to his room when he came upon a ninety degree bend in the hallway requiring him to turn right in order to proceed towards his room. Just as Plaintiff made his right turn around the corner of the hallway, a police officer spun left towards the Plaintiff, pointed a gun directly at Plaintiff without cause or justification, and yelled freeze; thereby placing Plaintiff in fear of imminent peril.
13. That Defendant, MIAMI DADE's, aforementioned actions created a known dangerous condition on THE PREMISES which was not readily apparent to the Plaintiff, LUCIOUS BROWN.
14. That the Defendant, MIAMI-DADE, had knowledge of the presence of persons in THE PREMISES who were likely to be injured by the aforementioned dangerous condition, including the Plaintiff and other paying guests of the Howard Johnson Motel who would be walking in the hallways of THE PREMISES to and from their motel room.
15. That the Defendant, MIAMI-DADE, failed to take steps to warn and/or protect the Plaintiff from the foregoing dangerous condition.
16. As a result, Plaintiff, LUCIOUS BROWN, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.
*416 In Count II of their second amended complaint, the Browns alleged negligence against Miami-Dade by reasserting the allegations contained in Count I and by adding, in relevant part, the following:
* * *
20. On or about June 12, 1997, Plaintiff, LUCIOUS BROWN, was lawfully upon THE PREMISES.
* * *
22. On or about June 12, 1997, Plaintiff, LUCIOUS BROWN, was walking on an inside hallway of THE PREMISES going from the Motel Lobby to his room when he came upon a ninety degree bend in the hallway requiring him to turn right in order to proceed towards his room. Just as Plaintiff made his right turn around the corner of the hallway, a police officer spun left towards the Plaintiff; pointed a gun directly at Plaintiff without cause or justification; and yelled freeze which resulted in Plaintiff losing his footing and falling to the ground.
23. The Plaintiff, LUCIOUS BROWN, was an innocent bystander and had no association with the police operation other than his walking in the hallway at or about the location of the police operation.
24. Defendant, MIAMI-DADE was negligent, such negligence includes, but is not limited to the following:
a. Failing to establish a safe perimeter around the ongoing police operation;
b. Failing to stop Plaintiff from walking into a dangerous situation by allowing him to walk down a hallway where an ongoing police operation was taking place;
c. Failing to use reasonable care in performing the police operation;
d. Creating a dangerous condition on THE PREMISES;
e. Failing to supervise and inspect, or insufficiently supervising and inspecting the police operation;
f. Failing to warn of prostitution related activity occurring on THE PREMISES;
g. Failing to warn of a criminal element present on THE PREMISES associated with prostitution related activity.
h. Failing to properly warn, or sufficiently warning [sic] the Plaintiff and the public of the dangerous police operation; and,
i. Failing to follow safety precautions in order to prevent harm to Plaintiff and others similarly situated;
25. That Defendant, MIAMI-DADE's aforementioned actions created a known dangerous condition on THE PREMISES which was not readily apparent to the Plaintiff, LUCIOUS BROWN.
* * *
The County moved to dismiss these claims on the grounds that its police officers were in the process of carrying out their discretionary power to enforce compliance with the law and, as such, their actions toward Mr. Brown could not give rise to tort liability. Alternatively, the County argued that even if the alleged police activity was not immune, the County owed no duty to the plaintiff greater than its duty to the public in general since the plaintiff was not in police custody. The trial court granted the County's motion to dismiss the plaintiff's claims and this appeal followed.
We begin our analysis with the question of whether the County owed an actionable duty to the appellants based upon the allegations contained in their complaint. That is because the issue of *417 sovereign immunity does not arise unless a common law or statutory duty of care existed which would have been applicable to an individual under like circumstances. See Kaisner v. Kolb, 543 So.2d 732, 734 (Fla.1989) (stating that: "while a duty certainly must exist for there to be liability, the question of governmental immunity does not itself depend upon this determination. That is, a court must find no liability as a matter of law if either (a) no duty of care existed, or (b) the doctrine of governmental immunity bars the claim."). We find that the County did owe a duty of care to Lucious Brown where the alleged conduct of the police created a foreseeable zone of risk to him as an innocent bystander. The Supreme Court in Kaisner has recognized that:
[w]here a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.
543 So.2d at 735.
As the risk grows, so too does the duty, because the risk to be perceived defines the duty of care to be undertaken. See City of Pinellas Park v. Brown, 604 So.2d 1222 (Fla.1992).
The appellants correctly point out that Florida courts have found that police officers do owe a duty to exercise reasonable care to protect innocent bystanders such as appellant, Lucious Brown, where their law enforcement activities create a foreseeable zone of risk. See e.g., City of Pinellas Park v. Brown, 604 So.2d 1222 (Fla.1992) (finding that police owed duty to innocent motorists killed while police were pursuing traffic violator in a high-speed chase); City of Miami v. Hong-De La Cruz, 784 So.2d 475 (Fla. 3d DCA 2001) (city owed duty of care to pedestrian injured as police pursued a felon on foot during crowded festival); Sams v. Oelrich, 717 So.2d 1044 (Fla. 1st DCA 1998) (deputy owed duty to innocent persons in hospital emergency room to reasonably control the acts of escapee taken to hospital by the police); Creamer v. Sampson, 700 So.2d 711 (Fla. 2d DCA 1997) (duty owed to innocent plaintiff motorist by police during high-speed pursuit of traffic offender).
Contrary to the argument advanced by the County, a police officer's duty to exercise reasonable care is not limited to "hot pursuit" situations or cases involving a custodial relationship between the police officer and the injured party. For example, in Henderson v. Bowden, 737 So.2d 532 (Fla.1999), a sheriff's deputy arrested a drunk driver and thereafter directed the driver's equally intoxicated passenger who was not in custody, to drive the vehicle to a nearby Circle K store to call his parents for a ride home. While operating the vehicle, this intoxicated driver had a collision with some trees, causing the deaths of two other passengers in the car. Like the County in this case, the Sheriff in Henderson argued that it owed no duty to the decedents because the operator of the car was not in its custody at the time of the collision. The court squarely rejected this argument and concluded that the Sheriff's deputies had placed the passengers of the car in danger by directing an intoxicated person to drive, and that this direction, more likely than not, created a foreseeable zone of risk giving rise to a legal duty. See 737 So.2d at 536. The Court further stated that:
... our holding today is not based on the fact that the passengers may or may not have been in the deputies' custody. Rather, our decision is based on the fact that the deputies' actions placed the passengers in danger.
Id.
Based upon the allegations contained in the second amended complaint, *418 we agree with the appellants that the County police created a foreseeable zone of risk to innocent bystanders such as Mr. Brown, while they were implementing the sting operation at the hotel. As a result, they owed a duty to exercise reasonable care to avoid harm to such bystanders. Having determined that an actionable duty existed, we must now determine whether the County's actions were nevertheless protected from suit under the doctrine of sovereign immunity.
Our supreme court has repeatedly held that governmental liability may exist when the act of the government or its agent is non-discretionary, but operational in nature. See Kaisner, 543 So.2d at 736 citing Avallone v. Bd. of County Comm., 493 So.2d 1002, 1005 (Fla.1986); Commercial Carrier v. Indian River County, 371 So.2d 1010 (Fla.1979). As used in this context, the court explained that the term "discretionary" means that the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning. See Kaisner at 737. An "operational" function, however, is one not necessary to or inherent in policy or planning, but merely reflects a secondary decision as to how those policies or plans will be implemented. Id.
Thus, in this case, we must determine whether the allegations in the second amended complaint regarding the officer's actions are discretionary or operational in nature. We conclude that they are operational in nature, as the appellants are essentially claiming that their injuries were sustained by virtue of the manner in which the police implemented their sting operation. As such, the County is not immune from suit for its alleged failure to exercise reasonable care to safeguard innocent bystanders such as Lucious Brown while effectuating its police operations at the hotel. See Henderson v. Bowden, City of Pinellas Park v. Brown; City of Miami v. Hong-De La Cruz; Sams v. Oelrich, 717 So.2d 1044 (Fla. 1st DCA 1998); State Dept. of Highway Safety v. Kropff, 491 So.2d 1252 (Fla. 3d DCA 1986); Weissberg v. City of Miami Beach, 383 So.2d 1158 (Fla. 3d DCA 1980).
Our decision in Seguine v. City of Miami, 627 So.2d 14 (Fla. 3d DCA 1993) does not dictate a different result as urged by the County. In Seguine, the police decision sued upon involved the manner in which the police had attempted to arrest an alleged felon, who committed suicide during the process. There, we found the police's decision as to what precautions, if any, to be employed to effectuate an arrest to be discretionary police functions for which there could be no tort liability. See 627 So.2d at 19 (stating that: "we think it best that such delicate law enforcement decisions be left to the discretionary judgment of the police without entangling the courts through our tort law in such fundamental law enforcement policies even where, as here, that judgment might in hindsight be arguably faulted either in whole or in part."). Here, Lucious Brown was not an alleged target of the sting operation at the hotel and the police were not attempting to arrest him.[2] Therefore, the challenged conduct in this case did not involve an officer's discretionary conduct in making an arrest.
Thus, for all of the foregoing reasons, we reverse the order of dismissal and remand for further proceedings.
Reversed.

*419 On Motion for Rehearing En Banc

PER CURIAM.
The motion for rehearing en banc is denied.
SCHWARTZ, C.J., and JORGENSON, GERSTEN, GREEN, FLETCHER, and SHEVIN, JJ., concur.
COPE, J. (dissenting from denial of rehearing en banc).
It appears to me that the panel opinion is contrary to part II of Trianon Park Condominium Association, Inc. v. City of Hialeah, 468 So.2d 912, 919-20 (Fla.1985); Garcia v. Reyes, 697 So.2d 549 (Fla. 4th DCA 1997); and Seguine v. City of Miami, 627 So.2d 14 (Fla. 3d DCA 1993). Under Trianon, when and how to make an arrest is an immune function, lest legitimate law enforcement functions be chilled for fear of civil liability.

I.
The police department conducted a prostitution sting operation at a Howard Johnson Motel. The plaintiff was a guest. While returning to his room he came around a corner. A police officer yelled "Freeze," and pointed a gun at the plaintiff. The plaintiff lost his balance, fell down, and suffered an injury.
The plaintiff sued the County for negligence. The trial court dismissed the complaint on the theory that either the County owed no duty to the plaintiff, or alternatively, that the police activity was an immune discretionary function for purposes of sovereign immunity.
The panel has reversed. Respectfully, the immunity doctrine is applicable here, and this court should affirm the dismissal.
As best I understand the plaintiff's position, it is that conducting a prostitution sting in a hotel creates a known dangerous condition on the premises and that the police had to issue some sort of general warning before conducting the sting. See Opinion at 416.
If I am reading this correctly, the plaintiff is saying that while doing a sting operation the police must set up some sort of perimeter around the hotel, presumably with barricades and yellow crime scene tape, before conducting the sting operation.
The essence of a sting operation, of course, is that it be kept secret from the target of the sting. The determination how to conduct the sting is pivotal to its success. The idea that there should be warnings posted, flyers distributed, barricades erected, and the like would defeat the police ability to conduct sting operations at all.
Ironically, the police officer in this case did warn the plaintiff to stay away from where the undercover operation was going on. What the plaintiff is really complaining about is not that there was a failure to warnhe was warnedbut that the police officer startled him by yelling "Freeze."

II.
The Florida Supreme Court in Trianon Park said:
How a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there never has been a common law duty of care. This discretionary power to enforce compliance with the law, as well as the authority to protect the public safety, is most notably reflected in the discretionary power given to judges, prosecutors, arresting officers, *420 and other law enforcement officials....
468 So.2d at 919 (emphasis added).
The Fourth District has addressed sting operations in Garcia v. Reyes, 697 So.2d 549 (Fla. 4th DCA 1997). Mr. Garcia had been the subject of a reverse sting operation in which it was found he had been entrapped. Garcia v. State, 582 So.2d 88 (Fla. 4th DCA 1991). He sued for damages because he had been in prison for thirty months before being freed. 697 So.2d at 549-50.
Relying on Trianon, the Fourth District ruled that there was no cause of action and that the claim was barred by sovereign immunity. Id. at 550-51 (citations and footnote omitted). The Fourth District concluded that immunity barred the claim, even though the police officers had used impermissible means in carrying out the sting operation.
In Everton v. Willard, 468 So.2d 936 (Fla.1985), the Florida Supreme Court said:
Our decision in this case is consistent with our holding in Wong v. City of Miami, 237 So.2d 132 (Fla.1970), in which we held that a governmental entity could not be held liable for damage caused during a riot, regardless of the fact that the city had removed police officers dispatched to guard against the damage. In that case we stated that the determination of strategy and tactics for the deployment of police powers was inherent in the right to exercise those powers. Id. at 134. We concluded by noting that "sovereign authorities ought to be left free to exercise their discretion and choose the tactics deemed appropriate without worry over possible allegations of negligence." Id. We reaffirmed that principle in our decision in Commercial Carrier, 371 So.2d at 1019-20.
468 So.2d at 939 (emphasis added).

III.
The panel opinion relies on seven cases for reversal. Opinion at 418. However, those cases all fall within several recognized exceptions to the discretionary immunity doctrine.
The panel relies heavily on Henderson v. Bowden, 737 So.2d 532 (Fla.1999), but it appears to me that the panel has misapprehended the rule set forth in that case. In Henderson, the police stopped a drunk driver. It was alleged that after arresting the driver, the police allowed an intoxicated passenger to drive the vehicle to a nearby Circle K convenience store and call his parents for a ride home. This individual drove the car away, crashed into trees, and two other passengers were killed.
The Henderson decision acknowledges that "the decision of whether to enforce the law by making an arrest is a basic judgmental or discretionary governmental function that is immune from suit." Id. at 537 (emphasis added; citation omitted).
The important point about Henderson is this. Once the intoxicated driver was arrested, the discretionary when-and-how-to-arrest function had been completed. It then became an operational decision what to do with the vehicle and the passengers. The teaching of Henderson is, very simply, that once the DUI arrest has been made, the officers must use due care in the disposition of the motor vehicle and the passengers. In making this post-arrest operational decision, the officers are not allowed to relinquish the motor vehicle to a passenger to drive away, if the officers know, or in the exercise of due care, should know, that the passenger is intoxicated.
Applying Henderson to the case now before us, the undercover officers were *421 engaged in trying to accomplish an undercover arrest. The officer who encountered the plaintiff was tryingalbeit abruptly and rudelyto keep hotel guests out of the area where the undercover operation was taking place. These activities were part of the discretionary function leading up to the making of the undercover arrest, and qualify for exemption under the sovereign immunity doctrine.
The panel relied on City of Pinellas Park v. Brown, 604 So.2d 1222 (Fla.1992), but it too is inapplicable. That was a high speed automobile chase which began when the offender ran a red light. The court held that the police must exercise due care when conducting a high speed motor vehicle chase on a public thoroughfare. Id. at 1225.
This result follows directly from Trianon itself, which says:
The lack of a common law duty for exercising a discretionary police power function must, however, be distinguished from existing common law duties of care applicable to the same officials or employees in the operation of motor vehicles or the handling of firearms during the course of their employment to enforce compliance with the law.
Trianon, 468 So.2d at 920 (emphasis added).[1] The City of Pinellas Park case is a simple application, or extension, of the motor vehicle rule already established in Trianon.
The panel opinion relied on City of Miami v. Hong-De La Cruz, 784 So.2d 475 (Fla. 3d DCA 2001), which reasoned that City of Pinellas Park should apply to a foot chase. The panel's thought process was that if a police officer must use due care in operating a motor vehicle during a high speed automobile chase, then logically the police officer must use due care in a foot chase of a fleeing suspect. The Hong-De La Cruz foot chase has no discernible application to the making of an undercover arrest.
The panel opinion cites Sams v. Oelrich, 717 So.2d 1044 (Fla. 1st DCA 1998), but that case also involves an operational (not a discretionary) function. In Sams, the police had taken an inmate into custody after he had attempted an escape. Since the prisoner had been injured, the police took him to an emergency room at the local hospital. The officer failed to supervise the prisoner, who again escaped, ran for the exit, and struck Ms. Sams and her children, injuring them. Liability attached because the sheriff had operational responsibility to maintain control over his prisoner. Id. at 1048. The sheriff was deemed to have a special relationship and owe a duty to the others who were in the emergency room, who might be harmed if the prisoner again attempted an escape. This, too, is a case of post-arrest operational responsibility.
The panel opinion relies on State Department of Highway Safety v. Kropff, 491 So.2d 1252 (Fla. 3d DCA 1986). The law enforcement officer took charge of the scene of an auto accident in the nighttime, but did so negligently. An approaching vehicle struck the plaintiff. There was no sovereign immunity because the officer's "actions in securing the scene were operational in nature...." Id. at 1255.
The panel opinion relies on Weissberg v. City of Miami Beach, 383 So.2d 1158 (Fla. *422 3d DCA 1980), another traffic case. An off-duty police officer was assigned to direct traffic while a telephone repair crew obtained access to telephone cables through a manhole located in a city intersection. The officer left his post and there was a collision in the intersection. Directing traffic was held to be an operational level activity, for which there was no sovereign immunity. Id. at 1159.
By contrast, the decision in Seguine v. City of Miami, 627 So.2d 14 (Fla. 3d DCA 1993) is similar to the present case, and supports the proposition that discretionary acts immunity applies here. In Seguine the police set out to arrest a mentally disturbed arrestee. When the police attempted the arrest, the arrestee jumped into a canal and drowned.
This court concluded that the decision how to make the arrest was a discretionary police function:
We think it best that such delicate law enforcement decisions be left to the discretionary judgment of the police without entangling the courts through our tort law in such fundamental law enforcement policieseven where, as here, that judgment might in hindsight be arguably faulted either in whole or in part. Stated differently, the courts, through our tort law, ought not be involved in second-guessing the police as to how best to effect the arrest of an allegedly suicidal or mentally disturbed suspect; such a decisioneven if arguably subject to possible criticism after the fact, as the plaintiff has done in this caseis best left to the political process to sort out, rather than entangling the courts in such fundamental law enforcement policies and thereby exposing the governmental entity involved to excessive tort liability.
Id. at 19.
Writing about an undercover operation, the federal Eighth Circuit said:
An undercover operation constitutes a "permissible means of investigation." United States v. Russell, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). Because secrecy was an integral part of the undercover operation in this case, the FBI did not notify interested persons who might have jeopardized that operation with their knowledge. See Powers v. Lightner, 820 F.2d 818, 822 (7th Cir.1987) (Pell, J., concurring) ("[T]he Government's role * * * in the undercover operation * * * had to be kept absolutely secret to preserve the sting's success.") Here, in developing a strategy to apprehend the retaggers, the FBI had to weigh the public concern for reducing widespread criminal activity against the harm to innocent victims resulting from a covert operation. See id. at 822. The FBI's decision to maintain secrecy thus involved the balancing of policy considerations protected by the discretionary function exception.
Georgia Casualty and Surety Co. v. United States, 823 F.2d 260, 263 (8th Cir.1987) (citation omitted).

IV.
Making arrests is a core function of law enforcement. Generally speaking, law enforcement must make arrests when, and where, the arrestee can be found.
In conducting undercover operations, law enforcement can sometimes engage in advance planning, but the decision where and how to do an undercover operation is still largely constrained by the target. If the goal is to arrest persons who are engaged in prostitution in a particular hotel, then the undercover operation will need to be located in that hotel. If the target is hand-to-hand sales of narcotics, then the undercover operation must take place *423 where those sales are conducted. If the target is someone engaged in selling large amounts of narcotics, the undercover transaction can be accomplished only where the target is willing to appear and deal.
The idea of the law enforcement exemption in this context is a sound one. Under this court's decision in Seguine, the Fourth District's decision in Garcia, and the Florida Supreme Court's decisions in Everton and Trianon, the police selection of methods for carrying out an undercover sting operation fall into the immunity for discretionary acts.
For the stated reasons, I dissent from the denial of rehearing en banc.
LEVY, GODERICH and RAMIREZ, JJ., concur.
NOTES
[1] Henrietta Brown also brought a loss of consortium claim against the County.
[2] Indeed, the County argued below that the police were attempting to preclude Mr. Brown from entering the area of the sting operation at the time of the incident which gave rise to this lawsuit.
[1] The quoted passage states that there is a common law duty of care in the handling of firearms during the course of police work. The "handling of firearms" presumably refers to situations in which a firearm is discharged, thus causing injury.

The plaintiff in this case has not argued that the "handling of firearms" exception in Trianon applies here, and rightly so. The firearm in this case was not fired.