627 So.2d 14 (1993)
William R. SEGUINE, Sr., as Personal Representative of the Estate of Wayne V. Seguine, Deceased, Appellant,
v.
CITY OF MIAMI, a Florida municipal corporation; Sergeant Fleming; Charles Wellons; George Cadavid; Walfrido Fonticiella; and John Aguiar, Appellees.
No. 92-296.
District Court of Appeal of Florida, Third District.
October 12, 1993.
Rehearing Denied December 21, 1993.
*15 Joe N. Unger, Arnold I. Levy, Miami, for appellant.
A. Quinn Jones, III, City of Miami Atty., and Charles C. Mays and Kathryn S. Pecko, Asst. City of Miami Attys., Miami, for appellees.
Before HUBBART, BASKIN and LEVY, JJ.
HUBBART, Judge.
This is an appeal by the plaintiff, William R. Seguine, Sr., as personal representative of the estate of Wayne V. Seguine, deceased, from an adverse final summary judgment entered in a wrongful death action. It was alleged in the action that City of Miami police officers were negligent in the method by which they attempted to arrest the plaintiff's decedent, an alleged suicide risk, and that, as a result, the decedent drowned himself in a canal rather than submit to arrest. We conclude that a police decision, as here, as to what precautions, if any, to employ in order to physically arrest an allegedly mentally disturbed or suicidal suspect is immune from tort liability because (1) such decision constitutes a discretionary police function, and (2) no special tort duty is owed by the police to such a potential arrestee under these circumstances. We accordingly affirm the final summary judgment under review.

I
Viewing the record in a light most favorable to the plaintiff, the following facts were shown below. On the evening of February 25, 1987, William Seguine, Jr. and his wife saw a television news report in Miami about a sexual assault on an elementary school girl. The report featured a composite drawing of a suspect Miami police were looking for in connection with this assault. Mrs. Seguine recognized the composite sketch as William's brother, the decedent in this case, Wayne Seguine, and called this to William's attention. The next day, William asked his brother Wayne about the attack at their construction job site. Wayne admitted that the police were looking for him in connection with the sexual assault, but denied any involvement in the crime. Wayne also stated that he would kill himself before going to jail because he had previously been in jail and had been molested there.
At first, William decided to help Wayne get out of town to avoid arrest. Fearing that Wayne might be recognized if he went home, William dropped Wayne off near the Tamiami Canal on S.W. 8th Street in Miami and told him to wait there until William returned with some clothes. When William arrived home, however, he had second thoughts about the plan and called his minister, Reverend Charles Robertson, for advice. William disclosed to Reverend Robertson that Wayne was currently being sought by the police for allegedly sexually assaulting a little girl, that Wayne was waiting for William at the canal, and that, in his opinion, Wayne was suicidal. After discussing the matter, the two men agreed that they should relay this information to the Miami police.
Pursuant to William's request, Reverend Robertson called the City of Miami Police Department and spoke to defendant Sergeant Fleming. Reverend Robertson told Fleming where Wayne was located, and that Wayne was considered suicidal. Reverend Robertson expressed great concern that special precautions be taken in approaching and apprehending Wayne, as Wayne might take his own life rather than go to jail. Sergeant Fleming assured Reverend Robertson that adequate precautions would be taken to protect Wayne and avoid any suicide.
The Miami Police Department, through its communication channels, relayed Wayne's location to three police officers in charge of the sexual assault investigation  defendants Walfrido Fonticiella, John Aguiar, and George Cadavid; these officers, however, were not informed that Wayne was represented to be a suicide risk. The three officers proceeded to the appointed location for the purpose of arresting Wayne on the sexual assault charge. Upon arrival, Fonticiella, while standing on the north bank of the Tamiami Canal, saw Wayne lying on his stomach on the south bank crawling toward the west. When Wayne stood up, Fonticiella drew his firearm and said, "Police, stop!" At that time, Wayne dove into the canal and *16 disappeared beneath the surface. Fonticiella immediately called for Fire Rescue to come to the scene; he then tore off the rear cushion of his police car and threw it to Wayne in the canal. Officers Aguiar and Cadavid were also on the scene; Aguiar threw a nylon rope into the canal to pull Wayne out of the water. Wayne resurfaced several times, refused to grab either the flotation cushion or rope to save himself, smirked at the officers, and ultimately drowned. Officers Fonticiella and Aguiar stated that had they known that Wayne was an alleged suicide risk, they would have had Fire Rescue on hand before attempting to effect the arrest; Officer Cadavid stated that he would not have changed the procedures which were used even if he had known about Wayne's alleged suicidal tendencies.
The plaintiff William R. Seguine, Sr., Wayne's father and the personal representative of Wayne's estate, brought a wrongful death action against the defendant City of Miami and the defendant police officers claiming that the defendants' failure to take special precautions in arresting Wayne constituted negligence and resulted in Wayne's death. Based on the above-stated facts, the defendant City of Miami and the four individual defendant police officers moved for summary judgment on the ground of sovereign immunity. The trial court granted the motion and entered final summary judgment for the defendants. The plaintiff appeals.

II
The Florida law on sovereign tort immunity is immensely complex, has lent itself to multifaceted formulations and rules over the years, and has generally been developed by the courts on a case-by-case basis depending on the particular fact pattern and policy concerns presented. Frequently, the general rules announced in the cases do little in themselves to resolve particular cases and, consequently, it is often best to see how these rules have worked out in broad categories of cases so as to determine what the courts have actually done in such cases and for what reasons. See, e.g., Gerald T. Wetherington & Donald I. Pollock, Tort Suit Against Governmental Entities in Florida, 44 Fla.L.Rev. 1-105 (1992) [hereinafter Wetherington & Pollock].
Generally speaking, the state and its subdivisions, including municipalities and counties, are sovereignly immune from tort liability unless such immunity is expressly waived by statute. See Art. X, § 13, Fla. Const. Section 768.28, Florida Statutes (1985),[1] in turn, expressly waives sovereign tort immunity and allows the maintenance of actions against the state and its subdivisions, including municipalities and counties,
"to recover damages in tort ... for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the [government entity] while acting within the scope of his office or employment under circumstances in which the [government entity], if a private person, would be liable to the claimant, in accordance with the general laws of this state...."
Id. Arguably, this statute, by its plain terms, could have been interpreted to mean that governmental and private tort liability are coextensive. Florida courts, however, have recognized two exceptions to this otherwise broad waiver of governmental tort immunity: (1) the discretionary function exception, and (2) the public duty doctrine exception. Although these exceptions are somewhat elusive and are not susceptible to neat formulations which fit all cases, the courts have nonetheless attempted to articulate these exceptions in general terms. Wetherington & Pollock, supra, at 30-31.

A
First, as to the discretionary function exception, it has been held that a governmental entity is not liable in tort when the governmental act being sued upon is "discretionary," as opposed to "operational," in nature. This exception is based on the separation of powers doctrine and recognizes that there are certain policy-making, planning, or judgmental governmental functions which are inherent in the act of governing and therefore *17 ought not be subjected to scrutiny by judge or jury as to the wisdom of their performance because it would inappropriately entangle the courts in fundamental questions of planning and policy. On the other hand, governmental acts which attempt to implement policy at the operational level do not fall within this discretionary act exception. Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989); Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979).
Second, as to the public duty doctrine exception, it has been held that a governmental entity is not liable in tort for breaching a duty which the government owes to the public generally, as opposed to a special tort duty owed to a particular individual. A plaintiff suing a governmental entity in tort must allege and prove that the defendant breached a common law or statutory tort duty owed to the plaintiff individually and not a tort duty owed to the public generally. This exception, which is hardly self-executing, is primarily based on the need to protect the government from excessive fiscal impact due to overburdensome tort liability; it also rests on the need to prevent the chilling of the law enforcement processes, as well as the availability of other remedies against private parties who initially created the danger which caused the damage. Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912 (Fla. 1985).
It is important to understand that if either exception to the waiver of sovereign tort immunity is applicable, the governmental entity sued is immune from tort liability. Consequently, even if the governmental action sued upon can be characterized as "operational" [that is, an action which attempts to implement governmental policy] so that the discretionary function exception is inapplicable, there still may be no governmental liability if the public duty doctrine exception is applicable. See Johnson v. Collier County, 468 So.2d 249, 251 (Fla. 2d DCA), approved, 474 So.2d 806 (Fla. 1985); Wetherington & Pollock, supra, at 35-36. Indeed, it is settled that "a court must find no liability as a matter of law [against a governmental entity] if either (a) no [special tort] duty of care existed [under the public duty doctrine exception], or (b) the doctrine of governmental immunity bars the claim [under the discretionary function exception]." Kaisner v. Kolb, 543 So.2d 732, 734 (Fla. 1989) (emphasis added). Moreover, at times, these exceptions may overlap and may both be applicable in a given case for different reasons.

B
In applying these two exceptions to the broad category of cases involving, as here, the protection of public safety by police officers, the courts have generally held such governmental action is immune from tort liability under either or both of the exceptions.
"How a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there never has been a common law duty of care. This discretionary power to enforce compliance with the law, as well as the authority to protect public safety, is most notably reflected in the discretionary power given to judges, prosecutors, arresting officers, and other law enforcement officials... ."
Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912, 919 (Fla. 1985). In this broad category of cases, the courts have primarily taken the view that the fundamental police function in enforcing the criminal law would be unduly hampered if law enforcement decisions were generally subject to after-the-fact judicial review through private tort litigation; also, the courts have been concerned in this area with protecting governmental entities against the excessive fiscal impact which would necessarily ensue if police decisions of this nature were generally subject to tort liability.
In accord with this analysis, it has been held that a governmental entity cannot be held liable for an allegedly negligent failure to arrest a person who subsequently injures another; this result has been reached because "the decision of whether to enforce the law by making an arrest is a basic judgmental or discretionary governmental function that is immune from suit, regardless of *18 whether the decision is made by the officer on the street, by his sergeant, lieutenant or captain, or by the sheriff or chief of police." Everton v. Willard, 468 So.2d 936, 937 (Fla. 1985). Moreover, the Court in Everton noted that this discretionary decision whether to arrest is grounded, as well, in the public duty doctrine exception:
"The basic principle involved [in this case] concerns the liability of all governmental bodies and their taxpayers for the negligent failure of their law enforcement officers to protect their citizens from every type of criminal offense. There has never been a common law duty of care owed to an individual with respect to the discretionary judgmental power granted to make an arrest and to enforce the law."
Id.
Nonetheless, there are certain limited areas where the courts, for fairness reasons, have held that a governmental entity may be liable in tort for law enforcement-type activity.[2] One such area, relied on by the plaintiff, relates to affirmatively negligent acts by police which place a person in a zone of danger when such person is in the physical custody of the police following a temporary detention or arrest  as where the police negligently order a temporarily detained motorist to remain at a particular location of danger in the street, resulting in injury to the person from oncoming traffic. Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989). In such cases, the courts have concluded that the governmental entity is no longer exercising a discretionary function, but has assumed a special tort duty to the detainee not to place such person in a zone of danger; this result has been reached primarily based on fairness reasons because the detainee, by virtue of being placed in police custody, has been deprived of the opportunity of self-protection from otherwise affirmatively negligent police orders. Kaisner, 543 So.2d at 734, 737-38.

C
Turning to the instant case, we have no trouble in concluding that the City of Miami and its police officers herein are immune from the negligence suit below based on a confluence of both the discretionary function and public duty doctrine exceptions to the waiver of sovereign tort immunity under Section 768.28, Florida Statutes (1985). The police decision sued upon as to how to arrest the plaintiff's decedent involves the enforcement of our criminal law, and, therefore, is generally immune from tort liability under the above two exceptions, absent special circumstances. Trianon Park. Contrary to the plaintiff's contention, no such special circumstances are presented in this case. It is true that the police made a decision to arrest the plaintiff's decedent for sexual assault, and that the police ordinarily incur certain special tort duties to any person who is arrested or detained. Kaisner. It is equally true, however, that the police did not, in fact, accomplish their mission in this case by actually arresting or detaining the plaintiff's decedent, and therefore did not in any way affirmatively place the decedent in a zone of danger from which he could not protect himself. Instead, Officer Fonticiella attempted to arrest the decedent in a routine manner by pointing a gun at the decedent and ordering him to stop  an attempted arrest which the decedent thwarted by jumping in an adjacent canal, by refusing all police efforts to rescue him, and by drowning himself. The police order to stop placed the decedent in no danger whatever; it was the decedent who placed himself in a zone of danger by disobeying the police order. It is, therefore, our view that no special tort duty ever arose in this case because the decedent was never in police custody and accordingly was never affirmatively placed in a zone of danger by the police. Compare California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (no Fourth Amendment seizure of the person where suspect disobeys police order to stop).
*19 Beyond that, the police decision as to what precautions, if any, should be employed to effect an arrest of a person who is represented as mentally disturbed or suicidal is clearly a discretionary police function for which there can be no tort liability.[3] It is often difficult for police to determine when to take suicide threats of this nature seriously, and, if taken seriously, how best to effect the ensuing arrest without unnecessarily endangering the suspect and the community. Police daily face decisions of this nature and often of even greater magnitude, as, for example, how to arrest a dangerous suspect who is holding hostages. We think it best that such delicate law enforcement decisions be left to the discretionary judgment of the police without entangling the courts through our tort law in such fundamental law enforcement policies  even where, as here, that judgment might in hindsight be arguably faulted either in whole or in part. Stated differently, the courts, through our tort law, ought not be involved in second-guessing the police as to how best to effect the arrest of an allegedly suicidal or mentally disturbed suspect; such a decision  even if arguably subject to possible criticism after the fact, as the plaintiff has done in this case[4]  is best left to the political process to sort out, rather than entangling the courts in such fundamental law enforcement policies and thereby exposing the governmental entity involved to excessive tort liability.
For the above-stated reasons, the final summary judgment under review is, in all respects,
Affirmed.
NOTES
[1] Because the incident in this case took place in February 1987, the 1985 version of Section 768.28 was in effect at that time and, accordingly, governs the disposition of this case.
[2] See, e.g., City of Homestead v. Suarez, 591 So.2d 1125 (Fla. 3d DCA 1992) (false imprisonment, excessive force in effecting arrest); City of Miami v. Swift, 481 So.2d 26 (Fla. 3d DCA 1985) (false arrest), rev. denied, 491 So.2d 278 (Fla. 1986); City of West Palm Beach v. Whittemore, 453 So.2d 507 (Fla. 4th DCA 1984) (false arrest); Consolidated City of Jacksonville v. Teage, 424 So.2d 67 (Fla. 1st DCA 1982) (excessive force in effecting arrest); Metropolitan Dade County v. Brill, 414 So.2d 626 (Fla. 3d DCA 1982) (excessive force in effecting arrest).
[3] We do not, by today's holding, preclude tort actions for brutality or unreasonably excessive force used by police to effect an arrest, as, traditionally, such actions have long been allowed under our tort law. See supra note 2. No such claim has been made in this case.
[4] The plaintiff faults the police in this case, among other things, for failing to have a Fire Rescue unit on hand when they attempted to arrest the decedent; he points to the opinions of two of the arresting officers [Fonticiella and Aguiar] that they would have had such a unit available had they known that the decedent was allegedly suicidal. This view, however, is contradicted by the view of the other arresting officer [Cadavid] who testified that he would have approached the decedent in the same manner as was undertaken in this case even if he had known of the decedent's allegedly suicidal tendencies. In any event, a previous police decision was made either by (a) the officer who received the initial call relating to the location and prior suicide threats of the decedent [Fleming], or (b) by someone else in the police chain of command not to take special precautions in arresting the deceased because it was not felt necessary or because a Fire Rescue unit was not then available or for whatever other reason, if any  and the suicide threat was, accordingly, not relayed to the arresting officers. The plaintiff strongly asserts that the failure to relay this information and to take special precautions in arresting the decedent arguably constitutes actionable negligence precluding a summary judgment. We do not think the courts should enter into this issues-laden thicket through our tort law to resolve the negligence claims raised herein because to do so would, as stated above, unnecessarily interfere with fundamental police policies, as well as subject the governmental entity involved to excessive tort liability.