[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 6, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-12917

_____

D.C. Docket No. 00-00128 CV-T-17A


PAMELA LEWIS, individually and as personal representative
of the Estate of Tyron Lewis, deceased,

Plaintiff-Appellant,

versus


CITY OF ST. PETERSBURG,

Defendant-Appellee.


_____

Appeal from the United States District Court for the
Middle District of Florida

_____
**(August 6, 2001)**


Before BLACK and BARKETT, Circuit Judges, and HOBBS\*, District Judge.

BARKETT, Circuit Judge:

_____

\* Honorable Truman M. Hobbs, U.S. District Judge for the Middle District of Alabama,
sitting by designation.

Pamela Lewis, as personal representative of the Estate of TyRon Lewis, appeals the dismissal of her suit against the City of St. Petersburg (the "City") brought pursuant to Florida's Wrongful Death Act, Fla. Stat. §§ 768.16 - 768.27, alleging causes of action for negligent use of a firearm and for negligent training. In addition to her state law claims, Lewis raised a federal claim under 42 U.S.C. § 1983. The district court also dismissed the federal claim; however, Lewis does not appeal this dismissal. On appeal, Lewis argues that the district court misapplied Florida law in dismissing her state law claims. We affirm in part and reverse and remand in part.

Lewis's Fourth Amended Complaint alleges that on October 24, 1996, James Knight and Sandra Minor, both City of St. Petersburg police officers, fatally shot TyRon Lewis through the windshield of his vehicle while he was stopped at an intersection. The complaint further alleges that Knight and Minor and other officers of the St. Petersburg Police Department breached the duty of care owed to Lewis "by discharging their firearms through a vehicle windshield and otherwise conducting themselves in a careless and negligent manner as to directly and proximately cause the death of TyRon Lewis," and that the City breached a duty of care owed to Lewis by "failing to properly train its officers in how to handle a crisis management situation and failing to train its officers regarding the proper use

2

of force in a crisis management situation."

The district court dismissed the negligent use of a firearm claim, holding that the complaint failed to state a claim because Lewis was alleging the negligent commission of an intentional tort and, alternatively, that sovereign immunity bars this claim. The district court also dismissed Lewis's negligent training claim finding that the City owed no duty specific to TyRon Lewis to train its police officers and, alternatively, that the City is protected from suit by sovereign immunity. This appeal followed.

We review the dismissal of a complaint de novo, construing all allegations in the complaint as true and in the light most favorable to the plaintiff. See Lowell v. American Cyanamid Co., 177 F.3d 1228, 1229 (11th Cir. 1999). Dismissal for failure to state a claim is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the [plaintiff's] allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

1.    Negligent Use of a Firearm

To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages. Paterson v. Deeb, 472 So. 2d 1210, 1214 (Fla. Dist. Ct. App. 1985). In this case, Lewis sued the City

3

of St. Petersburg, based upon the alleged negligent actions of its agents, the police officers. The State of Florida and its subsidiaries -- including municipalities -- are generally immune from tort liability, see Fla. Const., Art. X, § 13, however, Florida has waived this immunity "under circumstances in which the state or agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state."[1] Fla. Stat. § 768.28(1). At the same time, even if the claim contained sufficient allegations of tort liability under which a private person would be liable, the waiver of sovereign immunity would still not apply if the challenged acts of the state agent were "discretionary" governmental acts rather than merely "operational" ones. The district court in this case dismissed Lewis's claim on two grounds: (1) one of the elements of a tort under Florida law, the existence of the duty of care owed, could not be alleged by Lewis, and (2) the acts were "discretionary" and not "operational."

Thus, when a state or its subsidiary is sued in negligence, a court should first determine whether the circumstances alleged would subject a private person to liability under Florida law. Kaisner v. Kolb, 543 So. 2d 732, 734 (Fla. 1989) ("the question of the applicability of [sovereign] . . . immunity does not even arise until

---

[1] In Florida, a private person would be liable for its agent's acts occurring within the scope and course of the agency relationship, so long as those acts breached a duty of care owed to the plaintiff and that breach caused the plaintiff to suffer damages. See, e.g., Bennett v. Godfather's Pizza, Inc., 570 So. 2d 1351 (Fla. Dist. Ct. App. 1990).

4

it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity") (internal quotations omitted). If a court is satisfied that a duty of care is owed to the plaintiff, the court must still determine whether the challenged actions are nonetheless acts which required the exercise of basic governmental discretion, as opposed to the implementation of an already established policy. Accordingly, even if a plaintiff has adequately alleged all of the elements of a negligence claim, including the breach of a common law duty, immunity would still bar the claim if the challenged act were deemed to be governmentally "discretionary" in nature, and not merely "operational." See id. at 737. Under this framework, we first address whether the plaintiff has adequately alleged that a common law duty exists, and then whether the claim is nonetheless barred by the "discretionary" act exception to the waiver of sovereign immunity.

In Florida, when a "defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty [to all within the zone] placed upon [the] defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." Id. at 735; see also Henderson v. Bowden, 737 So. 2d 532, 535 (Fla. 1999); McCain v. Florida Power Corp., 593 So. 2d 500, 503 (Fla. 1992); City of Pinellas Park v. Brown, 604 So. 2d 1222, 1225

(Fla. 1992). This analysis applies equally to the actions of both public and private defendants. See Kaisner, 543 So. 2d at 735-36 ("We see no reason why the same analysis should not obtain in a case in which the zone of risk is created by the police.").

Here, the district court, erroneously read Kaisner, to hold that a duty of care only arises in those situations in which an officer places an individual in custody. The rationale of Kaisner makes clear that it does not limit application of the "zone of risk" analysis to situations in which the plaintiff is in custody, but rather is simply an application of the test to the particular set of facts presented in that case. Indeed, in subsequent cases, the Florida Supreme Court applied the "zone of risk" analysis to individuals not in custody. See, e.g., Brown, 604 So. 2d at 1225 (recognizing that officers owe a duty of care to innocent bystanders or third parties injured as the result of high speed car chases of fleeing suspects). Thus, reiterating Florida law, when a defendant, including a police officer, by his or her conduct creates a foreseeable zone of risk, the law imposes a duty owed by the defendant to all individuals within the zone to act with reasonable care. The complaint sufficiently alleges that Knight and Minor placed Lewis in a "zone of risk," and thus owed him and others within that zone of risk a specific duty to exercise reasonable care, when they drew and raised their weapons.

6

We find unpersuasive the City's argument that under <u>Seguine v. City of Miami</u>, 627 So. 2d 14, 16-18 (Fla. Dist. Ct. App. 1993), an officer's decision to arrest is not susceptible to suit for negligence. Lewis, does not challenge the officers' decision to arrest, but rather bases her suit upon the actions that occurred after the initial decision to arrest was made. Florida case law provides that these actions may give rise to tort liability. <u>See, e.g.</u>, <u>Kaisner</u>, 543 So. 2d at 735-36.

The City alternatively argues that even if a duty of care did arise, dismissal of the claim is still appropriate because Florida law does not permit a cause of action for "negligent use of excessive force." <u>See</u> <u>City of Miami v. Sanders</u>, 672 So. 2d 46, 47-48 (Fla. Dist. Ct. App. 1996) ("it is not possible to have a cause of action for 'negligent' use of excessive force because there is no such thing as the 'negligent' commission of an 'intentional' tort"). Florida law, however, clearly recognizes a cause of action for the negligent handling of a firearm and the negligent decision to use a firearm separate and distinct from an excessive force claim. As the state court in <u>Sanders</u> recognized:

> [A] separate negligence claim based upon a distinct act of negligence may be brought against a police officer in conjunction with a claim for excessive use of force. Nevertheless, the negligence component must pertain to something other than the actual application of force during the course of the arrest.

<u>Id.</u> at 48 (internal citations omitted). <u>See</u> <u>Trianon Park Condominium Ass'n, Inc.</u>

7

v. City of Hialeah, 468 So. 2d 912, 920 (Fla. 1985) (recognizing that existing common law duties of care are applicable to government officials and employees in the operation of motor vehicles and the handling of firearms during the course of their employment to enforce compliance with the law); Mazzilli v. Doud, 485 So. 2d 477 (Fla. Dist. Ct. App. 1986) (upholding negligence claims arising from law enforcement failure to exercise reasonable care when utilizing firearms where police officer arrived at the scene of a Drug Enforcement Agency arrest and fired at an undercover agent and admitted at trial that he did not know who was there but believed that someone was committing a felony).

Here, the complaint alleges that Knight and Minor acted negligently in using their firearms and that this negligence caused them to shoot Lewis while he was sitting in his car. Although discovery may reveal that the shooting was an intentional act and negligence played no part, at the motion to dismiss stage our review is limited to the allegations in the complaint construed in the light most favorable to the plaintiff. With this standard in mind, we conclude that the complaint adequately states a claim for negligent use of a firearm.

Having concluded that Knight and Minor owed a duty of care to Lewis and that the complaint adequately alleges a tort in which a private person would be liable, we must now consider whether the City is, nevertheless, immune from suit

8

on the ground that the officer's actions constituted "discretionary" and not "operational" acts.  The Florida Supreme Court has held that governmental liability does not exist when the challenged act of the government or its agent is "discretionary" in nature.  See Kaisner, 543 So. 2d at 736.  An act is "discretionary" when all of the following conditions have been met:

> (1) the action involves a basic governmental policy, program, or objective; (2) the action is essential to the realization or accomplishment of that policy, program, or objective; (3) the action require[s] the exercise of basic policy evaluation[s], judgment[s], and expertise on the part of the governmental agency involved; and (4) the governmental agency involved possess[es] the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision.

Trianon Park, 468 So. 2d at 918 (internal quotations omitted); see also Kaisner, 543 So. 2d at 737.

In this case, several of these conditions are not present.  First, the officers' action did not involve a basic governmental policy, program or objective.  Indeed, the decision as to whether use of a firearm is necessary is "not necessary to or inherent in policy or planning," and "merely reflects a secondary decision as to how those policies or plans will be implemented."  Kaisner, 543 So. 2d at 737.  Second, the challenged actions were not essential to the realization of a basic governmental policy.  See id.  ("Safer places or methods of ordering motorists to

9

the roadside may exist that would both protect the motorists and meet the government's objectives."). Finally, the actions did not require basic policy evaluation or expertise, rather, they required an assessment of how to implement policy. Id. ("This lawsuit merely asks the courts to consider the way in which this basic policy is implemented, not its fundamental wisdom.").

In short, an act is "discretionary" if it involves an "exercise of executive or legislative power such that, for the court to intervene by way of tort law would inappropriately entangle it in fundamental questions of policy and planning." Department of Health and Rehabilitative Serv. v. Yamuni, 529 So. 2d 258, 260 (Fla.1988); Kaisner, 543 So. 2d at 737. Conversely, an "operational" act is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented. Kaisner, 543 So. 2d at 737. Accordingly, under Florida law "[t]he decision of whether to enforce the law by making an arrest is a basic judgmental or discretionary governmental function that is immune from suit." Everton v. Willard, 468 So. 2d 936, 937 (Fla. 1985). Lewis, however, does not challenge the prudence of the officers' discretionary decision whether to arrest or detain, rather, she challenges the manner in which the officers implemented that decision. Under Florida law, when an officer has made an initial discretionary decision to conduct a stop and then

10

proceeds to carry out that decision, the officer is no longer exercising a "discretionary" function, but is engaged in an "operational" task. Kaisner, 543 So. 2d at 734, 737-38. In this case, the officers, having decided to stop Lewis, had an obligation to proceed with reasonable care. Lewis alleges that they breached this duty and that this breach caused the death of TyRon Lewis. Thus, the district court erred in dismissing Lewis's negligent use of a firearm claim.

2.  Negligent Training

In her negligent training claim, Lewis alleges that the City "breached its duty to TyRon Lewis by failing to properly train its officers in how to handle a crisis management situation and failing to train its officers regarding the proper use of force in a crisis management situation," and that this breach caused TyRon Lewis's death. As in the earlier discussion, in analyzing the validity of this claim, we first consider whether a Lewis has alleged sufficient facts under which the City, if a private entity, would be liable to Lewis in accordance with the general laws of Florida. See Fla. Stat. § 768.28(1); Kaisner, 543 So. 2d at 734. If so, we then analyze whether the "discretionary" function exception to Florida's waiver of sovereign immunity nonetheless bars tort liability on this claim.

Under Florida law, an employer is liable in tort for reasonably foreseeable damages resulting from the negligent training of its employees and agents. See,

11

e.g., McFarland & Son, Inc. v. Basel, 727 So. 2d 266 (Fla. Dist. Ct. App. 1999).

Thus, Lewis's claim that the City's negligent training of its employees caused

TyRon Lewis to suffer damages, taken as true and viewed in the light most

favorable to Lewis, alleges facts upon the City, if a private entity, would be liable.

The district court, however, dismissed Lewis's negligent training claim, finding

that Lewis had failed to show that the City owed a specific duty to TyRon Lewis to

reasonably train its law enforcement officers separate from that duty owed to the

public, and therefore the claim is barred by the public duty doctrine.

Under this doctrine, "a governmental entity is not liable in tort for breaching

a duty which the government owes to the public generally, as opposed to a special

tort duty owed to a particular individual." Seguine 627 So. 2d at 17.  In

Commercial Carrier Corp. v. Indian River City, 371 So. 2d 1010, 1015 (Fla. 1979),

however, the Florida Supreme Court explicitly held that the public duty doctrine

has no continuing vitality under Florida law subsequent to the effective date of

Fla. Stat. § 768.28.  Despite this ruling, several Florida District Court of Appeal

cases have continued to apply the public duty doctrine to bar tort liability for

governmental acts.  See, e.g., Seguine, 627 So. 2d at 17.  However, no case has

overruled Commercial Carrier and, in fact, in Trianon Park, 468 So. 2d at 918, the

Florida Supreme Court reaffirmed Florida's rejection of the public duty doctrine.

This apparent conflict between the District Court of Appeal cases and the Florida Supreme Court, and the resulting confusion surrounding the public duty doctrine, stems in part from the doctrine's inherent relation to the "discretionary" act exception to Florida's waiver of sovereign immunity. As noted earlier, a governmental agency is immune from tort liability based actions that involve its "discretionary" functions, such as development and planning of governmental goals and policies. This immunity is based upon the concept of separation of powers. See Yamuni, 529 So. 2d at 260 (defining an act as "discretionary" if it involves an "exercise of executive or legislative power such that, for the court to intervene by way of tort law would inappropriately entangle it in fundamental questions of policy and planning"). The public duty doctrine, to a certain degree, is based upon the same rationale. Thus, in many cases where the challenged act is "discretionary," the duty alleged to have been breached will be a public duty.[2] For example, in Everton v. Willard, the Florida Supreme Court affirmed the dismissal a complaint alleging the negligent failure to arrest a drunk driver against Pinellas County based upon the discretionary function exception. The Florida Supreme Court stated that the decision to arrest is a "discretionary power . . . considered

_____

[2] It should be noted, however, that the converse is not necessarily true. Indeed, in Commercial Carrier, the Florida Supreme Court found that although the government's duty to reasonably maintain the public roadways was a public duty, actions taken in performance of that duty can be operational, and thus not insulated from tort liability. 371 So. 2d at 1016, 1022.

basic to the police power function of governmental entities . . . ." 468 So. 2d at 938. The court then went on to state that:

> A law enforcement officer's duty to protect the citizens is a general duty owed to the public as a whole. The victim of a criminal offense, which might have been prevented through reasonable law enforcement action, does not establish a common law duty of care to the individual citizen and resulting tort liability, absent a special duty to the victim.

Id. Thus, in Everton, although the Florida Supreme Court's holding was based upon the discretionary function exception, the duty owed was also a public duty.

In this case, the district court found that the City's duty to reasonably train its police force is a public duty and dismissed Lewis's claim based upon the public duty doctrine. Although this duty is a public duty, dismissal on this ground was in error. See Commercial Carrier, 371 So. 2d at 1015-16. We, nonetheless, affirm the district court's dismissal of this claim because the acts which Lewis's negligent training claim challenge are "discretionary" governmental functions immune from tort liability.

Lewis does not challenge the implementation or operation of the City's police training program as it relates to the officers involved in the shooting, but rather Lewis challenges the City's policy decisions regarding what to include in the training of its police officers. A city's decision regarding how to train its officers

14

and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning. Because Lewis challenges the reasonableness of basic policy decisions made by the City, the "discretionary" function exception to the waiver of sovereign immunity applies and her claim is barred.

For the foregoing reasons, we affirm the dismissal of Lewis's claim of negligent training and we reverse the dismissal of Lewis's claim relating to the negligence of the officers in using a firearm in attempting to stop and/or arrest Lewis, and remand that claim to the district court for further proceedings consistent with this opinion.

Further, we remand to the district court to reconsider whether it should continue to exercise supplemental jurisdiction over the Lewis's state law claim because "all [the federal] claims over which it has original jurisdiction" have been dismissed, 28 U.S.C. § 1367(c)(3), especially in light of a related case pending in state court. "In making that determination, the judge should 'take into account concerns of comity, judicial economy, convenience, fairness, and the like.'" Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir. 1999) (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir.1996)). If the district court does decline to exercise supplemental jurisdiction, these claims shall be remanded

to state court, rather than dismissed, because this case was originally filed in state court and removed to federal court pursuant to 28 U.S.C. § 1441.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988); Hinson v. Norwest Fin. South Carolina, Inc., 239 F.3d 611, 617 (4th Cir. 2001).

AFFIRMED IN PART, REVERSED AND REMANDED IN PART