ROTHENBERG, J.
 

 In this petition for certiorari, Miami-Dade County (“the County”) seeks quashal of the trial court’s order denying its motion for summary judgment. Because Timothy Miller’s (“Miller”) negligence action against the County is not legally authorized, we have jurisdiction,
 
 see Miami-Dade County v. Fente,
 
 949 So.2d 1101, 1102 (Fla. 3d DCA 2007) (granting certio-rari relief and quashing the trial court’s denial of the County’s motion to dismiss on sovereign immunity grounds);
 
 Dep’t of Health & Rehab. Servs. v. Miller,
 
 413 So.2d 96, 96 (Fla. 1st DCA 1982) (confirming that interlocutory orders determining application of the doctrine of sovereign immunity are, where appropriate, subject to certiorari review), and we grant the petition.
 

 Miller seeks to hold the County liable for an alleged third party attack by an unknown person while Miller was waiting for a bus near the Dadeland South Metro-rail Station. Although the County contracted with Wackenhut Services, Inc. (“Wackenhut”) to provide security at the Metrorail Station, no guards were assigned to patrol the bus stop areas. Miller contends that the County breached its duty of care by failing to provide security guards or police officers near the bus stop to prevent the attack. The County moved for summary judgment on the basis of the public duty and discretionary function exceptions to governmental tort liability. The trial court denied the motion.
 

 “Generally speaking, the State and its subdivisions, including municipalities and counties, are sovereignly immune from tort liability unless such immunity is expressly waived by Statute.”
 
 Seguine v. City of Miami,
 
 627 So.2d 14, 16 (Fla. 3d DCA 1993);
 
 see also
 
 Art. X, § 13, Fla. Const. Section 768.28, Florida Statutes (2001), expressly waives governmental immunity and authorizes tort actions caused by the negligent act or omission of government employees acting within the scope of
 
 *1040
 
 their employment under circumstances in which a private person would be liable.
 
 See Fente,
 
 949 So.2d at 1103;
 
 Seguine,
 
 627 So.2d at 16. Florida courts, however, recognize two exceptions: (1) the discretionary function exception, and (2) the public duty doctrine exception. Where either exception applies, the governmental entity remains immune from tort liability.
 
 Kaisner v. Kolb,
 
 543 So.2d 732, 734 (Fla.1989) (holding that there is “no liability as a matter of law if
 
 either
 
 (a) no duty of care existed [under the public duty doctrine exception],
 
 or
 
 (b) the doctrine of governmental immunity [the discretionary function exception] bars the claim”);
 
 Fente,
 
 949 So.2d at 1103;
 
 Seguine,
 
 627 So.2d at 17.
 

 The County argues that Miller’s lawsuit against the County falls within both exceptions, and therefore, the trial court’s order is a clear departure from the essential requirements of law. We agree.
 

 The Public Duty Doctrine Exception
 

 Under the public duty doctrine exception, “[a] plaintiff suing a governmental entity in tort must allege and prove that the defendant breached a common law or statutory tort duty owed to the plaintiff individually and not a tort duty owed to the public generally.”
 
 Seguine,
 
 627 So.2d at 17. In
 
 Trianon Park Condominium Ass’n v. City of Hialeah,
 
 468 So.2d 912, 918 (Fla.1985), the Florida Supreme Court specifically found:
 

 [T]here is not now, nor has there ever been, any common law duty for either a private person or a governmental entity to enforce the law for the benefit of an individual or a specific group of individuals ... [and] there is no common law duty to prevent the misconduct of third persons.
 

 (Emphasis added).
 

 In the instant lawsuit, Miller claims that the County breached its duty by not providing police officers or security guards to enforce the law for Miller’s benefit and that it should have prevented the misconduct of the third party attacker. The County, however, had no such duty. Making arrests, investigating criminal activity, and preventing the commission of crimes are duties that law enforcement (or a governmental entity) owes to the public as a whole, not to individuals.
 
 See Pollock v. Fla. Dep’t of Highway Patrol,
 
 882 So.2d 928, 935 (Fla.2004) (holding that “[t]he responsibility to enforce the laws for the good of the public cannot engender a duty to act with care toward any one individual, unless an official assumes a special duty with regard to that person”);
 
 Trianon,
 
 468 So.2d at 919 (confirming that there has never been a common law duty of care with respect to enforcement of laws and protection of the public safety).
 

 Miller contends that while the County may enjoy sovereign immunity with respect to the enforcement of laws in general, once it opened and operated a facility, it owed its invitees a common law duty to operate the facility safely, just as a private individual is obligated under like circumstances. In support of his argument, Miller relies on the Florida Supreme Court’s opinions in
 
 Breaux v. City of Miami Beach,
 
 899 So.2d 1059 (Fla.2005), and
 
 Avallone v. Board of County Commissioners of Citrus County,
 
 493 So.2d 1002 (Fla.1986); the Fourth District’s opinion in
 
 City of Belle Glade v. Woodson,
 
 731 So.2d 797 (Fla. 4th DCA 1999); and this Court’s opinion in
 
 Hill v. City of North Miami Beach,
 
 613 So.2d 1356 (Fla. 3d DCA 1993). We find these cases, and the holdings in each, inapplicable to the case before us.
 

 Breaux
 
 does not involve the exercise of a governmental entity’s police powers and was based on “longstanding and well-settled precedent addressing governmental
 
 *1041
 
 entities that operate public swimming areas.”
 
 Breaux,
 
 899 So.2d at 1061. In
 
 Breaux,
 
 a swimmer drowned when she was caught in a riptide in the ocean off of a public beach and swimming area operated by the city. The Florida Supreme Court held:
 

 [W]hen a municipality ... operates a public beach as a swimming area ... the municipality has a duty to exercise reasonable care under the circumstances to those foreseeable users of that swimming area. This holding is based on our longstanding and well-settled precedent addressing governmental entities that operate public swimming areas.
 

 Id.
 
 (emphasis added). Similarly,
 
 Aválleme
 
 involved an accident that occurred on a dock of a county-owned park and swimming facility. The plaintiffs injury in
 
 Hill
 
 also occurred at a recreational facility located in a city-owned park. In finding that the city had a duty to protect Hill, as an invitee, from reasonably foreseeable risks, this Court specifically held that in the context of a public park, a landowner has a duty to protect an invitee on the premises.
 
 Hill,
 
 613 So.2d at 1357. Lastly, the plaintiff in
 
 Woodson
 
 was shot while on the premises of the city’s civic center where a large crowd of youths had gathered to attend a dance.
 

 In contrast, the attack upon Miller allegedly occurred after he had exited the me-trorail station and while he was on a public sidewalk waiting to board a Metrobus. Miller was not in a park or other recreational facility, which traditionally have been subject to tort liability. He was not in the metrorail station or on the bus and he had not paid his fare. Thus, no special circumstances were presented and the County did not owe Miller a special duty to protect his safety. The exercise of the County’s police power was, therefore, a purely governmental function which historically has enjoyed immunity from tort liability.
 
 See, e.g., Wong v. City of Miami,
 
 237 So.2d 132 (Fla.1970);
 
 Hernandez v. City of Miami,
 
 305 So.2d 277 (Fla. 3d DCA 1974).
 

 In
 
 Neumann v. Davis Water & Waste, Inc.,
 
 433 So.2d 559 (Fla. 2d DCA 1983), the Second District affirmed the trial court’s dismissal of a wrongful death complaint against the Department of Environmental Regulation (“DER”). Neumann’s three-year-old son was playing on top of a sewage treatment tank located within the plant, when he fell into the tank and drowned. Neumann’s complaint alleged that DER had a duty to construct, maintain, and operate the facility safely and to install fencing and warning devices to prevent injury. The Second District, however, noted that there are
 

 certain essential, fundamental activities of government [that] must remain immune from tort liability so that our government can govern. We perceive the pure exercise of the police power to be the clearest illustration of where to allow tort liability would strike at the very foundation of the power to govern.
 

 Id.
 
 at 562 (citation omitted). Specifically, the court concluded:
 

 If we were to hold DER liable here we would, by analogy, be requiring a law enforcement officer to be posted on every street corner. Any time a crime or other violation of law resulted in injury to person or property, a judge or jury would have to second guess the reasonableness or adequacy of the police action .... Government cannot become the insurer of those injured when its laws and regulations are broken or safety measures it imposes are ignored by others.
 

 Id.
 
 at 563.
 

 Under Florida law, where a citizen falls victim to a criminal offense that might
 
 *1042
 
 have been prevented through reasonable law enforcement action, no common law duty of care is owed to that individual (and thus no tort liability) absent a special relationship to the victim.
 
 Everton v. Willard,
 
 468 So.2d 936, 937 (Fla.1985). The Restatement (Second) of Torts § 315 (1965), which reads as follows, is consistent with Florida law:
 

 § 315. General Principle
 

 There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
 

 (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person’s conduct, or
 

 (b) a special relation exists between the actor and the other which gives to the other a right of protection.
 

 In
 
 Fente,
 
 this Court specifically noted that the responsibility to enforce the law for the good of the public does not create a special tort duty with regard to an individual unless the governmental entity places the individual within a “zone of risk.”
 
 Fente,
 
 949 So.2d at 1104.
 
 See also Pollock,
 
 882 So.2d at 935. In the instant case, the County did not create a special tort duty by placing Miller within a “zone of risk.” Miller was on a public street waiting for a bus. The County had no duty to post a law enforcement or security officer at the bus stop or to employ other security measures to protect citizens against law violations. Enforcing the law is a fundamental police function which we decline, as we have declined in the past, to subject to after-the-fact judicial review through private tort litigation.
 

 The Discretionary Duty Exception
 

 Certain discretionary functions of government are inherent in the act of governing and are immune from suit.
 
 Trianon,
 
 468 So.2d at 918. “[Ujnder the constitutional doctrine of separation of powers, the judicial branch must not interfere with the discretionary functions of the legislative or executive branches of government absent a violation of constitutional or statutory rights.”
 
 Id.
 

 In
 
 Trianon,
 
 the Florida Supreme Court held that the City of Hialeah could not be held liable in tort to individual owners of condominiums who sustained damages caused by severe roof leakage and other building defects allegedly arising out of negligent actions of city building inspectors in enforcing provisions of building codes enacted pursuant to the city’s police powers. The Court’s holding was based on the principle that judicial intervention into these discretionary functions violates the separation of powers doctrine. “How a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there never has been a common law duty of care.”
 
 Id.
 
 at 919.
 
 See also Smith v. City of Plantation,
 
 19 F.Supp.2d 1323, 1332 (S.D.Fla.1998) (granting the city’s and police officer’s motions for summary judgment in a tort action brought by Angela Smith after her home was destroyed and her children were killed during a hostage situation, finding that the city and officer were immune from a negligence suit under the discretionary function doctrine);
 
 Kaisner,
 
 543 So.2d at 733-35 (finding that the doctrine of separation of powers necessitates the recognition of a sphere of governmental activity that is immune from suit and that tort liability does not apply when the act of a government or its agent is discretionary);
 
 Seguine,
 
 627 So.2d at 17 (holding that the city and its officers were immune from suit under the discretionary function exception and finding that how a governmental entity exercises its discre
 
 *1043
 
 tionary power to enforce compliance with laws duly enacted by a governmental body is a matter of governance, which, for the most part, is not subject to tort liability);
 
 Neumann,
 
 433 So.2d at 562 (stating that “we perceive the pure exercise of the police power to be the clearest illustration of where to allow tort liability would strike at the very foundation of the power to govern”).
 

 The Florida Supreme Court’s decision in
 
 Wong
 
 is particularly relevant. Similar to the instant case, the City of Miami decided to scale back its security and removed police officers stationed on public and private properties who had been patrolling an area where a rally was taking place. Local storeowners sued the City after they sustained extensive property damage during a riot surrounding the 1968 Republican National Convention in Miami. The Florida Supreme Court upheld this Court’s af-firmance of the trial court’s order dismissing the plaintiffs’ complaint, finding that the City’s decisions to first deploy and then to withdraw law enforcement was protected under the discretionary function exception to governmental tort liability.
 

 In the instant case, the County, based upon its limited resource, made a discretionary decision not to provide security or other law enforcement personnel to patrol the area where the bus stop was located. Miller became involved in a verbal altercation with an individual while waiting at the bus stop, and was subsequently hit with a glass bottle wielded by another individual. We conclude that the County’s decision not to assign law enforcement or security officers to patrol the area of the bus stop is immune from tort liability under the discretionary function exception. To hold otherwise would violate the separation of powers doctrine. How a governmental entity exercises its discretionary power to enforce compliance with the law is an exercise of its inherent police power and is a matter of governance not actionable in tort.
 

 Conclusion
 

 Based upon the record before us, we conclude that the County was improperly sued in this case, and the trial court erred in denying the County’s motion for summary judgment. Because the trial court’s order denying the County’s motion for summary judgment requires the County to defend against claims for which it is statutorily immune, under the public duty and/or the discretionary function exceptions to governmental immunity, we grant the County’s petition for certiorari.
 

 Petition granted; order quashed.